SEITZINGER, Administrator of STROHECKER, for the use of
DRINKEL, Administrator of GARVER, *against* WEAVER,
Administrator of GRANT.

### APPEAL.

The covenants raised by the words *grant, bargain,* and *sell,* by force of
the act of assembly of the 28th of *May,* 1715, are not applicable alone to
deeds executed, but extend to articles of agreement for the conveyance of
land.

The words *grant, bargain,* and *sell,* do not create a covenant of special war-
ranty, running with the land and broken only by eviction. The act intended
to give to the vendee the benefit of two distinct covenants; a covenant of
seisin as regards defeasibility from the acts of the vendor, and a covenant for
quiet enjoyment against disturbance by the vendor, and those claiming under
him; and the covenant of seisin is broken by the existence of an incumbrance
created by the vendor, the instant it is sealed and delivered.

The previous sale of part of the land by articles of agreement, is an incum-
brance on the legal estate, which renders it defeasible in the hands of the sub-
sequent vendee, who may, therefore, maintain an action to recover back the
purchase money.

Where A. entered into articles of agreement to convey lands to B., who paid a
small portion of the purchase money, after which A. died, without having
executed a conveyance, but leaving a will, by which he empowered his exe-
cutors to sell for the payment of debts and education of children, and B.
took no steps to have the title completed, but C., B's father-in-law, and D.
his father, paid the residue of the purchase money, and received from the
executors of A. a conveyance for the land, which they afterwards divided
between them: *held,* that a suit could not be maintained upon the covenants
created by the words *grant, bargain,* and *sell,* in the agreement, in the name
of B., for the use of C., to recover back part of the purchase money, in con-
sequence of the existence of an incumbrance previously created by A., by
which the title of C. to part of the land was defeated. Nor can B. in such an
action, recover back that part of the purchase money which he has paid to
the testator.

The presumption of law is, that the acceptance of a deed in pursuance of articles
of agreement, is satisfaction of all previous covenants; and, although there
may be cases in which such acceptance is but a part execution of the contract,
yet, to rebut the legal presumption, the intention to the contrary must be
clear and manifest.

THIS cause was tried before TOD, J. at the Circuit Court of
*Northumberland* county in *April,* 1828, when a verdict was ren-
dered for the plaintiff. A motion, made on behalf of the defendant
for a new trial having been overruled, this appeal was entered.

The action was covenant, brought by *Jacob Seitzinger,* admi-
nistrator of *Daniel Strohecker,* for the use of *Daniel Drinkel,*
administrator of *John Garver,* against *Martin Weaver,* adminis-
trator *de bonis non, cum testamento annexo,* of *Thomas Grant,*
whose executors had been discharged from their office. The de-
claration was upon articles of agreement, dated the 26th of *April,*
1815, by which the said *Thomas Grant* agreed to sell to the said

(Seitzinger, Administrator of Strohecker, for the use of Drinkel, Administrator
of Garver, *v.* Weaver, Administrator of Grant.)

*Daniel Strohecker*, a certain tract of land, and contained a *profert*
of the agreement. The plea was *non est factum.* The instrument
having been lost, the plaintiff was permitted on the trial, though
opposed by the defendant's counsel, to prove its contents. It ap-
peared, that by the terms of the agreement, five hundred dollars of
the purchase money were to be paid in three weeks from its date;
half the residue, in the following *October*, and the other half on the
first of the following *April*. It contained no covenants except
those which might arise from the words "*grant, bargain,* and
*sell.*" On the agreement was the following endorsement:—

"I do agree to convey to *D. Strohecker* the within described tract
of land in fee simple. 13th of *May*, 1815." Signed *Enoch Smith.*

*Thomas Grant*, after having received from *Daniel Strohecker*
four hundred and ninety dollars of the purchase money, died, with-
out having executed a conveyance. He left a will, by which he
empowered his executors to sell his real estate for the payment of
his debts and the education of his children. *Daniel Strohecker*
took no measures to have the title perfected; but, on the 14th of
*June*, 1816, the executors of *Grant* executed a deed, with general
warranty for the premises contracted for, to *John Garver*, the
father-in-law, and *John Strohecker*, the father of *Daniel*, who paid
the residue of the purchase money. A partition of the land was
afterwards made between *John Garver* and *John Strohecker*. To
*April* Term, 1820, an ejectment was brought by *Rebecca Stedman*
against *John Johnson* and *Daniel Strohecker*, to recover a part of
the tract above-mentioned. It appeared, that on the 15th of *March*,
1792, *William Cook* and *Thomas Grant* had contracted, by articles
of agreement, to convey a tract of land to *James Stedman*; but the
evidence did not show in what manner *Rebecca's* title was con-
nected with this agreement. On the 23d of *January*, 1822, she
had judgment for eighty-nine acres and seventy-nine perches, of
which possession was delivered to her on an *Habere Facias Pos-
sessionem.* In the mean time, *John Garver* died, and on the 29th
of *April*, 1820, his heirs conveyed that portion of the land, which
in the partition had been allotted to him, and which included the
land afterwards recovered by *Rebecca Stedman*, to *George Kre-
mer*, who retained part of the purchase money to await the event
of the ejectment brought by *Rebecca Stedman*. A suit was after-
wards commenced by *Kremer* against the executors of *Thomas
Grant*, in which a judgment was confessed on certain terms of
compromise between the parties, in full satisfaction of damages on
the warranty.

The following were the reasons filed in the Circuit Court for a
new trial:—

"1. Because the court admitted evidence of the existence and
loss of the article of agreement declared on, upon the plea *non est
factum*, the declaration containing a *profert.*

(Seitzinger, Administrator of Strohecker, for the use of Drinkel, Administrator of Garver, *v.* Weaver, Administrator of Grant.)

"2. Because the court admitted the deed of the executors in evidence, no connexion having been shown before or after the admission, between *Daniel Strohecker* and the grantees in the said deed.

"3. Because the estate of *Thomas Grant* could be made liable in no other way upon the agreement, than by proceeding to prove the contract under the act of assembly providing for the proof of contracts made by decedents.

"4. Because the plaintiffs showed no breach of the acts in the articles in the lifetime of *Thomas Grant*, or afterwards, and did not show any act of *Thomas Grant* encumbering the estate."

And because the court erred in their charge to the jury in the following particulars:—

"1. In leaving it to the jury to infer, that the eviction of part of the land by *Rebecca Stedman*, was founded on the agreement between *Thomas Grant* and *James Stedman*, the evidence being contrary.

"2. In stating to the jury, that the words '*grant, bargain,* and *sell,*' in the articles declared on, were sufficient to sustain this action.

"3. In stating, that the article of agreement was not merged in the subsequent deed by the executors.

"4. In stating, that this action could be sustained for the use of *Seitzinger*, administrator of *Garver*, when there was no evidence whatever of any connexion between the said *Garver* and *Daniel Strohecker*.

"5. In stating, that on the evidence exhibited, the arrangement made by the executors of *T. Grant* with *George Kremer*, and the confession of judgment to *Kremer* in satisfaction of the warranty, amounted to nothing.

"6. In stating, that the article declared on, was a deed within the provisions of the act of assembly, and not merely an executory contract.

"7. In instructing the jury, that the measure of damages was the purchase money of the land, with interest on the same from the time of eviction.

"8. In saying the plaintiffs could recover in this action,—and because the verdict was against law and evidence."

*Greer* and *Marr*, for the appellant.—1. A lost instrument must be declared on as such. It was, therefore, improper, where the declaration was upon the instrument itself, of which *profert* was made, and the plea was *non est factum*, to permit evidence to be given of its contents. On these pleadings the agreement itself ought to have been produced. 1 *Phil. Ev.* 349, 404. 1 *Chit. Pl.* 349, 350. 1 *Saund.* 9, *a. note.*

2. The article declared on was an executory contract, which appears to have been rescinded. There was no privity of contract between *John Strohecker*, *John Garver*, and *Thomas Grant*, nor

(Seitzinger, Administrator of Strohecker, for the use of Drinkel, Administrator
of Garver, v. Weaver, Administrator of Grant.)

any evidence of any authority in *Daniel Strohecker* to bind them;
and if the article was not binding on them, it could not be binding
on *Grant* as relates to them. *Bellas* v. *Hays*, 5 *Serg. & Rawle*,
427.

3. The acceptance of a deed was a satisfaction of the articles, and
a waiver of all the covenants they contained. The money was not
paid on the articles, but on the deed from the executors. *Crotzer* v.
*Russell*, 9 *Serg. & Rawle*, 78. *Share* v. *Anderson*, 7 *Serg.. &
Rawle*, 60. *M'Dowell* v. *Cooper*, 14 *Serg. & Rawle*, 299.

4. The act of assembly of the 28th of *May*, 1715, sect. 6, *Purd.
Dig.* 163, making the words *grant, bargain,* and *sell*, amount to
an express covenant on the part of the grantor, clearly relates to
deeds executed, and does not embrace contracts merely executory.
If the article amounted to a deed, there was no necessity to stipu-
late in it for a deed. The authorities are numerous, that such an
agreement is not a conveyance and does not divest the legal title.
At common law there was no covenant implied in the conveyance
of the fee simple, and the act of assembly was designed to place
such an estate on a footing with less estates, in respect to which
the implied covenant runs with the land, and is one of warranty,
broken only on eviction, and giving an action only to the party en-
titled to the enjoyment of the land, who in this case was *Kremer*.
*Lessee of Stouffer* v. *Coleman*, 1 *Yeates*, 393. *Lessee of Sherman*
v. *Dill*, 4 *Yeates*, 295. *Lessee of Maus* v. *Montgomery*, 11 *Serg.
& Rawle*, 329. *Co. Litt.* 384, *a*. *Lessee of Gratz* v. *Ewalt*, 2
*Binn.* 95. *Sugd.* 400. After *Grant's* death his estate could be
bound, and advantage taken of his covenants only by having the
contract executed under the act of assembly, to enable executors and
administrators, by leave of court, to convey lands contracted for
with their decedents. The words *grant, bargain*, and *sell*, raise a
covenant against incumbrances suffered by, and for quiet enjoyment
against the grantor and those claiming under him. Here, the evidence,
if it proved any thing, proved a breach of the covenant for quiet en-
joyment, but it was defective in not showing an eviction. *Spencer's
Case*, 3 *Co. Rep.* 17. 7 *Johns. Rep.* 258. 3 *Johns. Rep.* 472. There
must be a special eviction, and it must be declared on as such. The
evidence did not show, that the eviction was under agreement be-
tween *Grant* and *James Stedman;* nor was there any thing to
show, in what manner *Rebecca Stedman* recovered. The property
was conveyed to *Kremer*, who alone could sustain an action, and
who was liable for the purchase money, if he colluded with *Grant*.
*Cro. Eliz.* 863. 3 *Com. Dig.* 262. *Co. Lit.* 385, *b*. 1 *Church's Dig.*
311, *No.* 22. *Id.* 312, *No.* 26. 13 *Johns. Rep.* 235.

5. The measure of damages was wrong. More than the price
paid for the land cannot be recovered, but less may. All that the
plaintiff has lost is the purchase money *Kremer* was to pay.

*Greenough* and *Biddle*, for the appellee.—1. The first point

(Seitzinger, Administrator of Strohecker, for the use of Drinkel, Administrator of Garver, *v.* Weaver, Administrator of Grant.)

made for the appellant is purely technical; and, when justice has been done, the court will not disturb the verdict for a matter of mere form.

2. The covenants contained in the articles of agreement, were not merged in the deed. All parties were deceived in supposing the executors had a right to execute the contract of their testator. The legal presumption, perhaps, is, that the acceptance of a deed waives the covenants contained in the articles; but where the parties act under misconception, and the intention is clearly otherwise, as it was in this case, that presumption is rebutted. *Crotzer* v. *Russell*, 9 *Serg. & Rawle*, 78. *Anderson's Executors* v. *Long*, 10 *Serg. & Rawle*, 55. *M'Dowell* v. *Cooper*, 14 *Serg. & Rawle*, 296. *Houghtaling* v. *Lewis*, 10 *Johns.* 297. *Bender* v. *Fromberger*, 4 *Dall.* 436. *Lessee of Sherman* v. *Dill*, 4 *Yeates*, 295. The article vested an estate in the land, and is within the act of assembly. *Neave* v. *Jenkins*, 2 *Yeates*, 107.

3. The covenant implied from the words *grant, bargain,* and *sell,* does not run with the land. It is not for quiet enjoyment, or of general warranty, but a covenant, that the grantor has not done any act, nor created any incumbrance by which the estate granted by him may be defeated. This covenant was broken as soon as it was made, and an eviction was not necessary to support an action. *Lessee of Gratz* v. *Ewalt*, 2 *Binn.* 95. 4 *Com. Dig. tit. Guarantee.* 2 *Mass. Rep.* 433. 14 *Johns.* 248. 4 *Am. Dig.* 564, *No.* 72. 4 *Johns. Rep.* 89, 93.

4. The value of the property at the time of sale, was the proper measure of damages. *Bender* v. *Fromberger*, 4 *Dall.* 444. *Delavergne* v. *Norris*, 7 *Johns.* 358. *Pitcher* v. *Livingston*, 4 *Johns.* 1. *Morris* v. *Phelps*, 5 *Johns.* 49. 9 *Johns.* 324. 3 *Caines*, 111.

The opinion of the court was delivered by

Gibson, C. J.—*Thomas Grant* articled with *Daniel Strohecker* for the sale of a tract of land; and, having received an inconsiderable part of the purchase money, died without having executed a conveyance. *Daniel* took no other step to complete the purchase; but, *John Strohecker*, his father, and *John Garver*, his father-in-law, paid the residue of the purchase money, took a conveyance to themselves, with general warranty from *Grant's* executors, who were empowered to sell, but only for payment of debts and education of the children; and, afterwards divided the land between them. *Garver* died, and his heirs conveyed with general warranty to *George Kremer*, who retained a part of the purchase money to await the event of an ejectment brought by *Rebecca Stedman*, by whom a part of the land has since been evicted on title derived from *Grant*. The plaintiff had recourse, in the first instance, to the warranty of *Grant's* executors; but having ascertained that it bound

(Seitzinger, Administrator of Strohecker, for the use of Drinkel, Administrator
of Garver, *v.* Weaver, Administrator of Grant.)

the executors personally, and not the estate,[*] he has brought this
action in the name of *Daniel Strohecker*, on the covenant implied
from the words grant, bargain, and sell, in the articles of agree-
ment.

It is insisted, that the act of assembly, by force of which such a
covenant can be implied, is applicable only to conveyances executed.
No express provision to that effect is found in the act itself; and,
there certainly is nothing in the nature of an executory contract to
call for such a construction. Where the vendee has done every
thing on his part to entitle him to the estate, the articles are an
equitable conveyance of the title; and, therefore, fall within the
letter, as well as the spirit of the enacting clause. He sometimes
obtains no other title, and for that reason alone, the law ought to
be construed liberally for his protection. Where a sound price has
been paid for an unsound title, I see no objection on this ground, to
its being recovered back.

It has also been urged, that the implied covenant is a special
warranty, which, running with the land, and being broken only on
eviction, gives a right of action only to *Kremer*, with whom *Grant's*
representatives have compromised. From expressions used by Judge
YEATES and Judge BRACKENRIDGE, in the *Lessee of Gratz* v. *Ew-
alt*, 2 *Binn.* 95, I at first inclined to think, that such had been the
cotemporaneous construction; but, having taken occasion since the
last term, to consult most of the ancients of the profession remaining
at the bar, I have not ascertained that any particular opinion on the
subject has generally prevailed. In the case just alluded to, the
inquiry was not into the nature of the covenant, but its extent; and
it was inadvertently called a special warranty, doubtless, because
every other covenant to secure the enjoyment of land, having fallen
into disuse, the term was used generically. There is nothing then,
in the way of the meaning of the legislature, as explained by itself,
that, "the words grant, bargain, and sell, shall be adjudged an ex-
press covenant to the grantee, his heirs and assigns, to wit: That
the grantor was seised of an indefeasible estate in fee simple, freed
from incumbrances done or suffered by the grantor; as also, for
quiet enjoyment against the grantor, his heirs and assigns." By
this, it was evidently intended to give the vendee the benefit of two
distinct covenants—a covenant of seisin as regards defeasibility from
the acts of the vendor, and a covenant for quiet enjoyment against
disturbance by the vendor or those claiming under him. But this
special covenant of seisin is broken by the existence of an incum-
brance created by the vendor, the instant it is sealed and delivered.
*Funk* v. *Voneida*, 11 *Serg. & Rawle*, 109. Now, every burden
on the estate, or clog on the title, such as a term for years, or grant
by copy of court roll, is an incumbrance, (*Vin. tit. Incumbrance*,

---

[*] See 16 *Serg. & Rawle*, 237.

(Seitzinger, Administrator of Strohecker, for the use of Drinkel, Administrator of Garver, *v.* Weaver, Administrator of Grant.)

*a,*) and the equity created by the sale to *Stedman,* was an incumbrance on the legal estate in the hands of *Grant,* which rendered it defeasible in the hands also of the subsequent vendee, who would, therefore, be entitled to an action to regain the purchase money.

Minor points have been argued, which it is unnecessary to consider, as there is, it seems to me, at least, one decisive objection to a recovery. It is this: the contract between *Grant* and *Daniel Strohecker* was abandoned, and the money now sought to be recovered back, paid on a different contract between other parties. If the administrator of *Daniel Strohecker,* in whose name suit is brought, has not a cause of action, neither has the person whose name *is* marked as the equitable plaintiff, only to designate him as the party to receive whatever the legal plaintiff may recover. But *Daniel* neither obtained a conveyance, nor entitled himself to one by payment of the purchase money. The estate, legal or equitable, never was in him; and his administrator, therefore, cannot have an action for a defect of title which was no prejudice to his intestate, and to recover back purchase money which his intestate never paid. But if he cannot recover, neither can the equitable plaintiff, who claims under him as an equitable assignee. Take it, however, that his father and his father-in-law, furnished the money on *Daniel's* account, and that the title was made to them with his assent: still the objection remains. By putting themselves in his stead, both he and they resigned the benefit of the implied covenant, inasmuch as they cannot sue in his name for what is, both at law and in equity, an injury not to him but to them. But could they introduce themselves into the contract without the assent of *Grant,* or some one authorized to assent for him? I shall attempt to show, that the executors had no authority to assent. But as I have already intimated, *Grant's* contract was with *Daniel Strohecker* alone; and no one else could be introduced into it, without his assent, so as to produce a personal responsibility on his part, or a representative responsibility on the part of his executors; for no principle is better established, than that a decedent's estate can be charged only on a liability created, immediately or remotely, by himself. If the executors have altered the contract, it is not that to which their testator assented, and they can be made to respond on it, only in their individual capacity, the estate being liable to refund to them whatever the transaction added to the assets. There was then, in the first place, the introduction of new parties in the place of the vendee. But there was also the introduction of new parties in the place of the vendor, and without his assent; for, it seems to me, the executors had no authority to perfect the contract, under the will. They were authorized "to *sell* and convey for *payment of debts and education of the children;*" but the execution of such a power, is an entirely distinct thing from the completion of a contract made by the testator himself. If the executors could convey in this instance, they might do so where all the purchase money but a shilling had

been paid, although the transaction could with no propriety be said
to be a sale for the payment of debts or education of the children.
Here a portion of the purchase money was in fact paid; and, as
regards that portion, the conveyance was not a sale in execution of
the power. But the conveyance could not be void in part, and good
for the residue; because, the act was, in its nature, incapable of ap-
portionment. The power was a naked one, and without interest;
and, therefore, to be construed strictly, 1 *Ves.* 306, 2 *Ves.* 69: conse-
quently, it is in this instance applicable only to a sale in the popu-
lar sense of the word. But there is a substantial difference in this
respect, between a sale by the executors and a sale by the testator
himself. Of the circumstances attending the latter they may be
ignorant, and, therefore, incompetent to judge whether the pur-
chaser is entitled to have the contract executed; and the parties to
be affected are consequently entitled, not only to have it proved,
according to the act of assembly, but the judgment of the court as
to its sufficiency. It seems to me, therefore, the original contract
could be perfected only by the adjudication of the court; and, pur-
suant to that, the executors could have conveyed to none but the
original purchaser. We have, then, the case, not only of vendees
who had no right to become parties to the original contract, but
also of vendors equally destitute of such a right. In what light did
these parties themselves view the transaction? Undoubtedly, as a
new purchase. There was an entire departure from the contract in
the articles. The money was paid, not on the articles, but on a
conveyance to persons who were not entitled under the articles;
and, under the guarantee, not of the implied covenant in the arti-
cles, but of the personal covenant of the grantors. The original
contract was evidently abandoned, (possibly because it was not
thought prudent to vest the title in *Daniel*,) and a new one, in sub-
stance a sale, framed on the basis of it, by which alone the exe-
cutors had power to convey a title.

But even if the contract were not changed, and the conveyance
were taken to have been in execution of the articles, (the grand
postulate of the plaintiff's argument,) it would leave him exposed to
a rule of law, which would be fatal to his claim. The presumption
of law is, that the acceptance of a deed in pursuance of articles, is
satisfaction of all previous covenants; and, where the conveyance
contains none of the usual covenants, the law supposes, that the
grantee agreed to take the title at his risk, or else, that he would
have rejected it altogether. This is apparent in *Howes* v. *Barker,*
3 *Johns.* 506; and decisively established by *Share* v. *Anderson,* 7
*Serg. & Rawle,* 43; *Crotzer* v. *Russell,* 9 *Serg. & Rawle,* 78, and
*Houghtaling* v. *Lewis,* 10 *Johns.* 279. Down to the period of its
consummation, an executory contract is subject to modification; and,
where an act is done, which, without fraud or mistake, is tendered
on the one side, and accepted as full performance on the other, it is

. (Seitzinger, Administrator of Strohecker, for the use of Drinkel, Administrator of Garver, *v.* Weaver, Administrator of Grant.)

not competent to the party who accepted, to allege that some part of the original contract remains to be performed. Here there was a new covenant taken, which is inconsistent with the supposed retention of the old one. There may, undoubtedly, be cases where the acceptance of a conveyance will be but a part execution of the articles, as in *Brown* v. *Moorhead*, 8 *Serg. & Rawle*, 569, where a covenant to convey a particular tract of land, and also to cause the interest of a third person in another tract to be conveyed, was held, not to be satisfied by a conveyance of the first mentioned tract. But to rebut the presumption, which the law would otherwise make, the intention to the contrary must be clear and manifest. The case of *Anderson* v. *Long*, 10 *Serg. & Rawle*, 55, is not an exception. There the articles were admitted to show, not an unsatisfied responsibility, but the consideration of the bond on which the suit was founded; and, as regards the stipulation, that the debt should not be demanded without six months' notice, the object was to show fraud or mistake. In the case at bar, there is nothing to oppose the presumption, but on the contrary, a strong circumstance in corroboration of it; and it, therefore, seems to me, the objection to the verdict on this ground, is insuperable.

The root of the error is to be found in the supposition, that the covenant of the executors would bind the estate of their testator. Its liability could be preserved only by proving the contract, and taking a conveyance in pursuance of an adjudication of the court, in which the operative words *grant*, *bargain*, and *sell*, would have been as effectual as when used by the testator. In this way, or in pursuance of a power delegated in the will, but no other, could the executors have subjected the estate to the consequences of their covenant; and, in this way, might the purchasers have paid their money on the credit of the estate: they chose to pay it on a covenant which pledged nothing but the credit of the executors, and the mistake is incurable.

It might seem to admit of a doubt, whether *Daniel Strohecker's* administrator may not recover back that part of the purchase money which was paid in the lifetime of *Grant*. A decisive objection is, that he cannot recover for what was no injury to him—a defect in a title, which, in equity or at law, was never conveyed to him. His remedy was on the covenant to convey, and his course was to entitle himself, by proving the contract, and tendering the purchase money; in which case, had the executors not tendered an unexceptionable title, he might have recovered against them for rescinding the contract, or have accepted the title, and maintained an action on the implied covenant of seisin in the conveyance. Instead of this he pursued a course unauthorized by the act of assembly, and precluded himself altogether.

Tod, J. and Smith, J. dissented.

Judgment reversed, and a *venire facias de novo* awarded.