McIlvaine, J.
The overruling of the demurrer to the petition is assigned for error. The demurrer was taken on the ground that the petition did not state facts sufficient to constitute a cause of action. The first point made under this assignment is that the petition did not state that the plaintiff’ had been evicted under the alleged outstanding paramount title. The deed from Buchanan to plaintiff below, upon which suit was brought, contained the usual covenants, all of which were specially set out in the petition ;• and among others a covenant of seizin, a covenant against incumbrances, and a covenant of general warranty. The petition also averred the existence of a paramount title to a portion of the premises outstanding at the time the covenants were made.
Now, if it turns out that the plaintiff’ below was not entitled to judgment on any of the covenants contained in the deed without showing an eviction, the demurrer was well taken; for, in our opinion, the facts stated in the petition did not show an eviction, either actual or constructive.
The claim of the defendant in error is, that the facts stated in the petition constitute a cause of action on the covenant of seizin, and that an averment of an outstanding *588 superior title to a part of the premises described in the deed at the time the covenant was made, is a sufficient statement of a breach of that covenant to entitle the plaintiff to recover as damages the full consideration paid for chat portion of the premises of which the covenantor was not, in law, seized at the time of the conveyance.
The doctrine that seizin in fact is a compliance with this covenant, and that no right of action accrues there'on until the covenantee, who was put in possession under his deed, has been evicted by him who was seized in law, has been fully settled in this state. It was first maintained in Backus v. McCoy, 3 Ohio, 211, and soon after, that decision was followed in Robinson v. Neil, 3 Ohio, 525. It was again considered and approved in Foote v. Burnet, 10 Ohio, 317, and again in Devore v. Sunderland, 17 Ohio, 52. These decisions have become a rule of property in this state, and must be followed under the rule of stare dedsis, if they can not be sustained upon any other grounds.
It follows, therefore, that in an action upon the special covenant of seizin, a breach is not sufficiently shown by an averment negativing the legal seizin of the covenantor at the time the covenant was made, but his seizin in fact must also be negatived. There is no averment in this petition that the covenantor was not in fact seized at the time he executed the deed.
I have been thus particular in showing that the petition could not have been sustained upon the theory that the action was based on the covenant of seizin, for the reason that several other questions in the case are thereby put at rest.
Regarding the action below, however, as based on the covenant against incumbrances, a breach was sufficiently stated in the petition. The covenant against incumbrances is broken as soon as made, if an incumbrance in fact exists; and a right of action thereon immediately accrues to the covenantee at least for nominal damages. But in such action more than nominal damages can not be recovered, unless the covenantee has removed the incumbrance or it be shown that bis possession has been disturbed, or his use *589 or enjoyment of the land has, in some way, been interfered with by reason of the incumbrance.
It is also claimed by plaintiff in error, that the alleged, incumbrance was excepted from the covenant against incumbrances. (This question was raised in the court below upon the charge to the jury; but it is more properly considered here, as all the facts bearing upon the question are-found in the petition.)
The covenant was made in these words : “And I, William Buchanan, do, for myself, my heirs and administrators, covenant with the said Thomas Smith, his heirs and assigns, that the said premises are free from all incumbrances whatsoever, except a claim which John Wilkinson has on said land for iron ore.”
The alleged incumbrance was a coal right or interest and privileges conveyed by William Buchanan to John Wilkinson on the 14th day of May, 1845. The following are all the material terms of that conveyance, to wit:
“ In consideration of the premises and of the sum of twenty-five cents, to me in hand paid by the said Wilkinson, and the further sum of five dollars per acre for each acre of ore and coal taken and used from the lands hereafter described, agreed to be paid by the said Wilkinson so fast as the same shall be used and determined by measurement, I, William Buchanan, have granted, bargained, and sold, and by these presents do give, grant, bargain, sell, and convey unto the said Wilkinson, his heirs and assigns, all the iron ore and coal upon the lands following, to wit” (describing the lands mentioned in the petition among others); “ together with the privilege of entering upon said lands, excavating, digging, and mining for the said ore and coal and preparing the same; and also the further right and privilege to construct, repair, and use such roads and ways as he or his assigns may deem necessary for the removal of said ore and coal from off said. lands, together with the like right of way over any adjoining lands owned by me for the same purpose: to have and . *590 to hold to him, the said John Wilkinson, his heirs and assigns, forever.”
The exception to the covenant should not be extended by construction beyond the plain and ordinary meaning of its terms. The interest of Wilkinson in the coal situate in or upon the lands conveyed was not in terms excepted, nor the servitude imposed upon the premises for excavating and removing the coal. The terms of the covenant against incumbrances clearly embraced the whole of Wilkinson’s claim under his deed of May 14, 1845; and whatever exception therefrom the covenantor intended to make should also have been clearly expressed. It is more reasonable to suppose that the covenantor expected to procure from Wilkinson a release of his coal interest, or intended to run the risk of'the claim ever being asserted against the land, than it is to suppose that the covenantee intended to except from the operation of the covenant an interest clearly within, not only the terms of the grant, but also the terms of the covenant itself.
In this connection, it is suggested in argument that the words, “ except a claim -which John Wilkinson has on said lands for iron ore,” were used by the parties to designate the deed which Wilkinson held, and that the.true intent of the parties was to except the whole of his claim under that deed from the operation of the covenant. And it is further claimed that this construction is fair and reasonable, in consideration of the fact that that deed had been a matter of public record for many years before the making of the covenant in question. 'We can not see how the fair and natural import of the words can be departed from. The fact named can have no such influence. If it were shown that the Wilkinson deed had been before the parties at the time the exception was made, the conclusion would be inevitable that the omission of the coal privilege was intentional, for then there would be no suspicion of mistake. If its contents were not known, it would be violen to presume that the parties intended to except the whole -claim of Wilkinson under his deed, which would have been *591 ■the effect of the exception had the words “ for iron ore ” been omitted. It was the addition of these words “ iron •ore ” that excludes the presumption that “ coal ” also was intended to be excepted.
It is also claimed by plaintiff' in error, that the interest in the coal and coal privileges acquired by Wilkinson under his deed does not constitute an incumbrance within the meaning of this covenant.
The deed purports to “give, grant, bargain, sell, and convey ” all the iron ore and coal upon the premises, together with the privilege of entering on the lands, excavating and mining for coal and iron ore, with the further privilege of roads and ways. A vested interest in a part of the land, and an easement in the balance, accrued to Wilkinson upon the delivery of the deed ; and although it may be true that the title to the coals in place vested absolutely in the purchaser, yet from the nature of the property the only valuable or profitable exercise of the rights of ownership consisted in the right to remove the coal and ore. The right to remove them must have been the sole inducement to the purchase, as dominion in fact could be exercised over them in no other way; and when removed the entire estate in the lands is left in the grantor or those succeeding him in the estate.
The right or interest thus conveyed to Wilkinson, we think, fairly comes within the most approved definition of an incumbrance within the scope and meaning of this covenant, namely, “ every right to or interest in the land, which may subsist in third persons, to the diminution of the value of the land, but consistent with the passing of the fee by the conveyance.” Rawle on Cov. 95, and cases cited. Within the authority of decided cases the right to cut and remove growing trees is an incumbrance. 22 Pick. 447; 97 Mass. 195; 6 Allen, 420. A right of dower either inchoate or consummate. 3 Zabr. 260; 8 Ala. 373; 2 Greenl. 26; 49 N. H. 549. A private way. 46 Penn. St. 229; 2 Allen, 598; 15 Pick. 68; 5 Conn. 497. A lease *592 for years. 2 Speers, 649. A contract of sale. 1 Rawle, 382. A right of way for railroad. 24 Iowa, 69, etc.
The demurrer to the petition was properly overruled.
The next assignment for error is based on the sustaining of the demurrer to the original answer of the defendant below.
That answer was as follows, to wit:
“ 1. The said defendant, for answer to said petition,, says that he denies that said pretended coal lease to said Wilkinson is or ever was an incumbrance upon said premises, for he says there is not now, nor was there at the time-of executing said pretended lease, nor at the time of the-execution of said deed to said plaintiff', nor at any other time, any coal in or upon said premises; and that, therefore, said pretended lease could not convey any right famine or remove coal therefrom, and could not be an incumbrance.
“2. Asa second ground of defense, he says that neither' said Wilkinson nor any one holding under him by virtue of said pretended lease ever evicted said plaintiff from said pretended coal right or interest, nor ever took possession of said pretended coal interest, nor of said premises nor any portion thereof, for the purpose of takiug possession of said coal or coal interest, or searching or prospecting therefor; and in fact no possession of or interference with, said premises has ever been taken or made in or upon said'premises under said lease whatever.
“ 3. As a third ground of defense, the said defendant says that he denies that said plaintiff paid McCreery, Bailey & Co. $885.44, or any other sum, in order to procure a. release or cancellation of said pretended coal lease, and denies said pretended expenses; and also says that said coal interest or pretended coal lease is and ever was entirely valueless and worthless, and that said pretended cancellation, dated April 20, 1865, is without any consideration and void, and only gotten up and obtained as a speculation-- and a fraud upon the-estate of said William Buchanan,. *593 and he further denies that said pretended paper is a cancellation of said coal interest.”
From the view we take of the cause of action stated in the petition, and have already expressed in disposing of the-former assignment of error, it follows that the matters set up in this answer could not have defeated the plaintiffs right to recover, as they relate solely to the measure and: amount of damages. And again, to the fullest extent that the facts therein stated constitute proper matter for pleading, the defendant had the full -benefit of them in his amended answer, wherein they were restated.
The next assignment is, that the court erred in permitting incompetent evidence offered by the plaintiff below to-go to the jury.
1. It appears from the bill of exceptions, that the courtr permitted the plaintiff below to offer in evidence, against the-objection of the defendant, a written statement of his claim or account duly authenticated, as required by section 85 of' the “ act to provide for the settlement of the estates of deceased persons.” S. & C. 581.
The purpose for which this instrument was offered, or the ground of objection to it, does not appear in the record.
A copy of the instrument was attached to and made part of the petition, which contained the follow averments in relation to it, viz: “And the said plaintiff further saith, that upon the 12th day of April, 1865, he presented to the-said Jeremiah Stambaugh, executor of the last will and testament of the said William Buchanan, deceased, defendant, his account duly verified according to law, for the amount so as aforesaid paid to remove said incumbrance by coal lease, and for said necessary expenses incurred in the removal of the same. A copy of which, with the indorsements thereon written, is hereunto attached and made a part of this petition, marked ‘Exhibit C,’ and demanded acceptance and payment thereof, which was refused,, although the same is due and payable by said defendant in *594 his said capacity as executor, by reason of the premises above set forth.”
In argument the ground of the objection to this evidence is stated to be, that the rejection or disallowance of the claim by the executor was not indorsed upon it, and that there was no averment in the petition that he had refused to indorse his allowance or rejection on demand being made for that purpose. It is claimed by plaintiff in error that, on the authority of Keenan v. Sexton’s Adm’r, 13 Ohio, 41, an action can not be maintained against a decedent’s estate until the claim has been duly presented for allowance, with a specific demand that its rejection or allowance be indorsed thereon. We do not conceive that by the statute (sec. 90 of the act of March 23, 1840, S. & C. 582), or uuderthe authority of the case referred to, the right to sue depends upon an indorsement on the claim of its disallowance, or upon the fact that the creditor has made a specific demand that the allowance of the claim be indorsed thereon. That an une quivooal rejection of the claim should be obtained before suit is undoubtedly true; but the only purpose of the last clause in the section of the statute referred to, is to make a refusal on the part of the executor or administrator to indorse his allowance, when demand is made for that purpose, conclusive proof of its rejection.
The averment in the petition in relation to the presentation and rejection of the plaintiff’s claim was sufficient; and although there was no necessity for proof as the pleadings stood (there being no denial of the averment), still we think there was no error in admitting the evidence.
It is also claimed that the court erred in admitting certain testimony offered by the plaintiff for the purpose of proving the existence, quantity, and quality of coal on the premises in question. The testimony objected to was to the effect that coal seams of certain thicknesses and quality had been discovered and mined upon other lands in the vicinity, and the opinions of witnesses who claimed to have knowledge of the geological structure and formations *595 of the neighborhood, that coals of like quantity and quality existed on the lauds in question.
We think there was no error in the admission of such testimony. It tended to establish the facts for which it was offered.
For the purpose of showing that the incumbrance complained of had been bought in and extinguished by the plaintiff below, he offered in evidence certain deeds and records of deeds purporting to transfer and convey the estate and interest constituting the alleged incumbrance as follows, to wit:
1. The deed from William Buchanan to John Wilkinson, dated May 14, 1845.
2. The record of a deed from John Wilkinson to John M. Crawford, dated January 16, 1858.
To the introduction of this record the defendant excepted. The point made is, that the deed was insufficient to pass title by reason of uncertainty in -the description of the property. The description is as follows : “All my interest in real estate, easements, and rights to dig and mine . . . coal in Mahoning county, Ohio, conveyed . . . to me, . . . and now owned, held, and enjoyed by me . . . from William Buchanan.” There was no error in admitting this evidence.
There is no uncertainty as to intention, and parol evidence was admissible to identify the property intended, Barton v. Morris, 15 Ohio, 408.
3. The record of a deed from John M. Crawford and others to George W. Crawford, dated March 10, 1856.
4. The record of a deed from George W. Crawford and others to John H. McCreary, dated May 2, 1864.
5. A deed from John H. McCreary to William McCreary, Lawrence P. Hitchcock, John S. Dilworth, James M. Bailey, and John H. McCreary, constituting the firm of McCreary, Bailey & Co., dated June 11, 1867.
This deed was objected to, on the ground that it was executed after the commencement of the action. This objection was not well taken.
*596 The gist of the action on this covenant is the existence of an incumbrance at the time the covenant was made;, and the measure of damages is compensation for injuries sustained previous to the date of the recovery. Money paid for the removal of the incumbrance after the commencement of the action may be recovered. Kelly v. Low, 18 Maine, 244; Leffingwell v. Elliot, 10 Pick. 204; Brooks v. Moody, 20 Pick. 474; Mosely v. Hunter, 15 Miss. 322. This rule has been applied generally in cases where the incumbrance was removed by the mere payment of money, but we can see no reason why it is not applicable as well in eases where the extinguishment can be affected only by purchase and deed of release. Iu both classes of cases the covenantor is alike protected from further liability on the covenants in his deed, and the covenantee is simply put in possession of the fruits of his contract, without further delay or multiplicity of actions.
The plaintiff then offered in evidence, under exception,, an instrument of which the following is a copy. (This instrument was written on the back of the deed from Buchanan to Wilkinson), to wit:
“In consideration of $958.33, received of Ebenezer S. Cowden, and $1,051.67, received of Thomas Smith, of the aggregate amount of which $1,700 is for coal interest (as shown, of which for coal interest $885.44 was paid by said Smith and $814.56 was paid by said Cowden), and $300 for ore interest, covered by the within lease, we, McCreary, Bailey & Co., covenanting that as owners' and holders of said lease we have a good right to release, cancel, and. annul the same, do hereby cancel and forever annul said lease as fully as though the same had juever been executed.
“ In testimony whereof, we have hereunto set our hand and seal, this 12th day of April, in the year 1865.
“ McCreary, Bailey & Co. [seal.]
“Witness: John McClain, William Watson.”

*597
State of Ohio, Mahoning County, ss :

“Before me, William Watson, a justice of the peace in and for said county, personally appeared William McCreary, of the above firm of McCreary, Bailey & Co., and acknowledged the signing and sealing of the above instrument to be their voluntary act and deed, for the purposes therein mentioned, this 20th day of April, a. d. 1865.
“ William Watson, Justice of the Peace.”
Although the record does not purport to contain all the testimony offered on the trial, yet it does clearly show that the title constituting the incumbrance complained of, was held by John II. McCreary in trust for McCreary, Bailey & Co., .at the time this instrument was executed. And that this instrument was ineffectual to transfer the title so held, is a proposition too plain for discussion. Nor was the defect in the transmission of the title to the plaintiff cured by the subsequent conveyance by the trustee to the individual .members of the firm for which he was trustee.
The objection to this evidence is, that the instrument was wholly inoperative, in law, to transfer or release the incumbrance, because the firm of McCreary, Bailey & Co. was not capable, in law, of either holding or transferring the title in or by the name of the firm.
We have already said that the covenant, upon which suit was brought, was broken as soon as made, if an incumbrance upon the lands in fact existed. The plaintiff below was entitled to recover nominal damages upon proof of the execution of the deed and the existence of the incumbrance; but beyond nominal damages he was not entitled to recover without proof of special injury. Upon breach of the covenant against incumbrances, there is no presumption of actual damage, for the reason that no such damage necessarily accrues on the breach. Yet it may accrue in various ways. The covenantee may be obliged to remove the incumbrance in order to save his estate; he may be evicted under it, or he may be subjected to loss and inconvenience in the use and enjoyment of the estate. In this case, for the purpose of showing special injury, he *598 alleged in Ms petition that he had paid to McCreary, Bailey & Co.j the then owners of the incumbrance, the sum of $885.54 in order to remove the same, and that the same had been extinguished by means of the instrument in question.
Now, as this instrument was not competent to prove the payment of the money, or the extinguishment of the title, and as it could have been used for no other purpose, it was improperly admitted.
It is suggested, however, that inasmuch as this instrumeent tended to prove an equitable title in the plaintiff', and as for aught that appears in the record, other and competent proof of the extinguishment of the legal title may have been offered, there is no error to the prejudice of the defendant below manifest in the record.
In the face of the averment in the petition, that the incumbrance was removed by the instrument in question, we can not assume that other and competent evidence of its extinguishment was offered; but be that as it may, it is a sufficient answer to the suggestion to say that the ownership of the equitable title to the incumbrance was not the question involved in the issue, but the question, upon which the right of the plaintiff below to recover actual damages depended, was whether or not the legal title to the incumbrance had been extinguished. On this question, the evidence objected to may have been, and probably was considered by the jury, and for that reason the judgment should be reversed.
In conclusion, I may add that in a case like the present, where the only claim for actual damages consists of expenses incurred in removing the incumbrauce, the covenantee, in order to recover such damages, must show that the legal title to the outstanding estate has been extinguished, so that the covenantor may not, in any event, be again prosecuted on account of the same defect in the warranted title by an action on other covenants in his deed,, after the eviction of a subsequent grantee of the estate at the suit of an innocent purchaser of the outstanding title.

Judgment reversed, and 'cause remanded for a new trial.