570

## CHICAGO TELEPHONE SUPPLY CO. v. STACKPOLE CARBON CO.

### No. 7253.

Circuit Court of Appeals, Third Circuit.
June 29, 1940.

Ira Milton Jones, of Milwaukee, Wis. (Stebbins, Blenko & Parmelee, of Pittsburgh, Pa., of counsel), for appellant.

Brown, Critchlow & Flick, of Pittsburgh, Pa. (Jo Baily Brown and Victor A. Peckham, both of Pittsburgh, Pa., of counsel), for appellee.

Before BIGGS, MARIS, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

The art is a small corner of the vast radio structure. All of us are familiar with the "click" when we turn on our radios. That click reflects the closing of a power switch. We also recall that to increase (or in reverse decrease) the volume of sound we turn the knob further. That further turning lowers the resistance and so raises the sound. It is desirable to prevent electrical interference as between the switch mechanism and the resistance circuit (rheostat).

Two electrical engineers pose the problem thus: "If a charged object (that is, an object with a voltage different from that of the ground, or greater than zero) is suspended above the ground, there is an electrostatic field between the object and the ground. This field may be represented by lines of force extending from the object to the ground, between which the voltage of each line of force is graduated from zero to that of the object. Consequently, if a second and uncharged object is placed in the field between the first object and the ground, the second object will assume a voltage corresponding to its place in the field. However, frequently it is not desirable for the second object to become so 'charged.'" Hartmann and Meagher, Shielding in Radio Receivers, Radio News, February, 1927, p. 988, 2 R. 69.

The patent is in essence a bid for a monopoly in a hole. The patent solicitor, of course, does not put it quite that way. In a case recently considered in this Circuit, another patent solicitor dignified the humble orifice by calling it a "localized opening", Gardiner v. Freed Heater Mfg. Co., 3 Cir., 107 F.2d 364, 365. We say that the patent is for a hole for this reason. Everyone agrees to the desirability of separating the two elements by a non-conductor. That separation had been accomplished by what the industry describes as shielding. The shields are small and thin pieces of metal (aluminum, brass, copper) and are grounded. They are almost as old as the art both in practice, Centralab Volume Control, 1930, Exhibit UU, 1 R. 385, Centralab Volume Control, 1931, Exhibit VV, 1 R. 385, Atwater Kent Volume Control, Exhibit R., 1 R. 384, Atwater Kent Volume Control, Exhibit S, 1 R. 384, in the scientific literature, cited in Hartmann and Meagher, Shielding in Radio Receivers, above cited,[1] and Felix, Why Shielding?, Radio Broadcast, June, 1927, 2 R. 83,[1] and in the kindness of the Patent Office, Patent to Moore, No. 1,641,-

[1] Robinson, Manual of Radio Telegraphy and Telephony, pp. 282, 396; Fleming, Principles of Electric Wave Telegraph and Telephony; Meagher, Proper Shielding and How to Do It, N. Y. Telegram and Evening Mail, Radio Section, August 30, 1924; Morecroft and Turner, The Shielding of Electric and Magnetic Fields, Proceedings I. R. E., August, 1925; Clemons, The Shielding Problem, QST. March, 1926; Dreyer and Manson, The Shielded Neutrodyne Receiver, Proceedings I. R. E. April, 1926; Henderson, Multi-Purpose Shielded Units, QST. Sept., 1926; Hazeltine, Discussion of Articles in Proceedings I. R. E. August, 1925 and April, 1926, above cited, Proceedings I. R. E. June, 1926.

395. In an article received in evidence, 1 R. 345, 2 R. 79, and relied on in defendant's brief, p. 8, the learned author describes the operation of these shields, saying: "* * * Obviously, any change of potential in a conductor in a radio set will cause potential changes in all nearby conductors. Warding off the influence of the electrostatic field is simple and the most elementary application of shielding will accomplish it. The electrostatic influence is restricted by placing a grounded conductor between any point where potentials rise or fall and neighboring objects which are likely to be influenced by the electrostatic effects resulting therefrom. If a good conducting path is provided to the ground, the influence of the electrostatic field does not penetrate beyond the shield." Felix, Why Shielding?, above cited, p. 83, 2 R. 79.[2]

To secure compactness with a protruding switch and a flat plate as elements, a hole in the plate is plainly a sine qua non. By the same token, it is obvious not only to any mechanic (electrician) but to any child.[3] This assumes that a change in size whether by way of shrinking or expanding is patentable at all. Any such view would tend to proportion the number of patents to the number of inches available in and for a particular apparatus.

We think that the less said about the claimed prior use the better. For that reason we do not place our decision on that ground. The alleged inventor is himself an artisan in a radio assembly plant. Other persons had had his idea, but, as he claimed, later in time. To defeat them he had to assert and prove completion of his work in April, 1928. In the interference proceedings he did so. But that very evidence was dangerous on prior use; in other words, we have the horns of a dilemma. We declare for neither horn and so need not adjudicate the interesting question of experimental use. A Circuit Court of Appeals in another Circuit took a serious view of one horn, Globe-Union, Inc. v.

Chicago Telephone Supply Co., 7 Cir., 103 F.2d 722.

The decree of the District Court dismissing the bill of complaint is affirmed.

---

[2] "A similar result may be achieved by interposing a grounded conducting plate between the objects. Now the lines of force terminate on the plate and are conducted to the earth". Hartman and Meagher, Shielding in Radio Receivers, Radio News, February, 1927, p. 988, 2 R. 69.

[3] Brown, Developments in the Patent Law as Effected by Adjudications, Tenth Anniversary number, United States Patents Quarterly, p. 9; Forkosch, The Economics of American Patent Law, 17 New York University Law Quarterly Review 157, 406.