# Williams *against* Landman.

Upon a parol sale of land which is in the actual possession of a tenant under a parol lease, and the agreement of the vendor that the rent should be paid to the vendee and the attornment of the tenant to him; this is such a delivery of possession to the vendee as, with proof of the payment of the purchase money, will enable him to maintain ejectment upon his title.

ERROR to the Common Pleas of *Fayette* county.

This was an action of ejectment by William Williams against William Shipley and Adam Landman for a tract of land in Henry Clay township, containing 61 acres. The whole case and points put to the court are so fully stated in the opinion of this court that no other statement is deemed necessary.

*Deford*, for the plaintiff in error.
*Veech*, for the defendant in error.

The opinion of the Court was delivered by
Huston, J.—Both parties admitted that the title to the land in question had been in Christian Landman. The defendant, Adam Landman, was his son. The plaintiff, Williams, a son-in-law,

[Williams v. Landman.]

claimed under a contract with old Mr Landman, an old German clergyman, who had become too old to preach; he had a tract of land on or among the ridges of the Allegheny mountain, claimed by settlement without any office or paper title.

The facts were as follows: The old gentleman had made a written contract with another son-in-law named Chitister, by which he had agreed to convey his title to the land to Chitister, who was to support him and his wife during their lives and bury them. The old people went to Chitister's, but in no long time became dissatisfied, and according to Chitister's statement he and his wife were also dissatisfied. The old gentleman went to Williams and proposed the same terms to him, to which he agreed, and went with him to Chitister's and sent a wagon to remove the goods; when there Chitister refused to give up his contract or to let the goods go until he was satisfied for some moneys he had expended and was paid for the boarding. All this was settled, and Williams gave his note for the amount of the claim, $100; and Chitister agreed that the articles of agreement should be taken up from Mitchel, who held them, and cancelled. Chitister had a tenant on the land, and he agreed that the rent should be paid to Williams; and he told the tenant to pay to Williams; that he, Chitister, was now done with it. The contract with Williams was fully proved. The agreement left with Mitchel was agreed to have been given up, and it was proved and admitted by Chitister that he had been paid the $100, by assignment of a note or notes on another man, which he had collected. Three witnesses examined on a commission to Ohio, swore that old Mr Landman had given possession to Williams; but neither stated the time exactly; and three or four examined in court swore that old Mr Landman said he had given the land to Williams and had given him possession, and that Williams was to support him and his wife during life and bury them decently. The removal was the last of March or beginning of April, and the old gentleman died the next harvest or soon after, and his widow the following year. I may venture to conjecture that this occasioned all the dispute; if the old people, or one of them, had lived 7 or 10 years, there would have been no doubt.

So far there was perhaps no dispute as to facts; but some discrepancy as to this. Gilmore, the tenant, swore that it was agreed between Williams and him that the tenant was to omit putting in any winter grain, so as to leave the whole land open for cultivation next spring, and for his doing so Williams was to abate $20 of the rent; but other persons said Williams gave the tenant $20 to give him possession. If the tenant was honest, he certainly knew best what was the bargain. After the old man's death, Chitister went to warn the son, and he at the next Orphans' Court petitioned for a partition or valuation of the whole trust. The

[Williams v. Landman.]

inquest divided the tract, and immediately on the return of the inquisition, Adam elected to take 61 acres (the part now in dispute) as his share. Williams had appeared before the sheriff and inquest and protested against their proceedings, as he asserted the whole tract was his, and not Christian Landman's at his death. No further proceedings were had in the Orphans' Court. Immediately after this, Adam Landman brought an ejectment against Williams and his tenant; the suit was tried in 1834, and decided in favour of Williams, who then moved on to the land, cleared up some 20 or 30 acres, and erected valuable buildings, (but not on the 61 acres claimed by Adam). In 1839, Adam again brought an ejectment, which was tried in 1842, and verdict and judgment in his favour; as soon as he entered, Williams brought this suit in 1842.

Chitister had been examined as a witness at a former trial, and the notes of his testimony, proved by the counsel who took the notes, were offered in evidence and objected to because the witness was still alive in Virginia, only a few miles from the place of trial. The court overruled the objection. Where a witness is out of the State and beyond the jurisdiction of the court, his deposition or notes of his testimony are to be read as if he were dead. How Chitister could be a witness is not easily seen. Adam brought his case before the Orphans' Court on the idea that his father had never sold to Williams; and stating that Adam and Mrs Williams and Mrs Chitister were his children and heirs. Williams defends as a purchaser, and Chitister and wife are as much interested as Williams or Adam. Our paper book does not show anything of it, but the counsel of Adam said Chitister had released. For more than 20 years after *Steele* v. *Phœnix Insurance Co.*, a party in interest, or even on the record, releasing, was admitted as a witness. This was to throw light on the transaction. The late chief justice more than once regretted the adoption of this practice; and at length every judge on this bench, and I believe in the State, and all respectable lawyers, jurors and laymen, became satisfied that it produced most palpable injustice. An honest and honourable man would not do it; no defendant could become a witness, and defendants were at the mercy of plaintiffs according to their want of honour or honesty. I do not know what form of release he gave; if there is any right in any one but Williams, it is in Chitister's wife, and he cannot release that. Such releases were so publicly torn and thrown away as soon as the trial was over, that were I a juror I would pay no attention to such witness.

The proceedings, so far as they went in the Orphans' Court, were offered in evidence and admitted: " The court overrule the objection, for although it may not conclude the plaintiff, yet the defendant has a right to show it, *to rebut the plaintiff's claim and establish his own title to the land;*" these are the words of the

VIII. — 8

judge on the record.   Exception was taken and sealed.   I would be, as I have been, unwilling to overrule a decision on the inaccuracy of expressions used during the hurry of a trial.   That a party can make title to himself by filing a petition in court any more than by writing a letter, is so absurd that I cannot suppose such an idea ever was for a moment entertained by the judge.   I suppose the land in dispute was that part which Adam had proposed to take as his share; now he could have filed a diagram of that and taken defence for that only; and it might have been stated to the jury that if they disbelieved all the plaintiff's testimony, he could not recover that part from Adam.   It was no evidence to rebut the plaintiff's claim or to establish Adam's title; and there is error in this as it is written.   If the possession is adverse to the title of the heirs, the Orphans' Court ought not to receive a petition to divide or value.   If after the inquest it is found the possession is adverse, all proceedings ought to cease until the right is tried in the Common Pleas.   This I have known done more than once.   The Orphans' Court cannot try the title, and have no jurisdiction where the intestate did not die seised.

The defendants offered to prove by parol that on the first and second trials Williams claimed as a purchaser from Chitister, and not on a contract with old Mr Landman; this was objected to, admitted, and another bill of exceptions.   In point of fact the proof only went to the last trial; and the witness, after stating the witnesses who testified pretty much as now, (there had been previously to the present trial a commission to Ohio, and much clear and distinct testimony obtained from three witnesses), said, " I recollect no testimony of a purchase from C. Landman in his lifetime."

A person who has lost a verdict in ejectment may bring a new ejectment, and if he has purchased a different title, show that; or he may obtain more full proof as to the title he had before, or he may rebut some of the testimony of his adversary; or the points of law arising on the facts may be more fully considered; or the cause, on further testimony and more consideration of the law, assume a different aspect; and the court and jury are to decide on the case made out before them.   In England equitable circumstances go into chancery, and the jury decide on the credibility of witnesses and on the facts; after long acquiescence in a verdict, and then a new ejectment, the finding of a jury on testimony given while the witnesses spoke of recent facts, ought to weigh much with a jury; but when new facts are adduced, or other points of law made, the testimony then offered is at best useless and a waste of time.   And in this case the senior counsel was absent in the Legislature when the last trial was had; and what his colleague said or did might be the misfortune of his client, but ought not to have weighed in this case.   The case in 1 *Watts & Serg.* 445, fully considered, does not apply to this case.

[Williams v. Landman.]

Certain points were proposed to the court.

1. If the contract between Christian Landman and Chitister was rescinded, and the plaintiff, Williams, agreed with the old man to take the land and keep him and the old lady and pay $100 to Chitister, which agreement was carried into effect by the delivery of the land to the plaintiff and the payment of the $100 and keeping the old people, the plaintiff has a good title and is entitled to recover.

2. If the old man delivered the possession to the plaintiff, and Chitister's tenant attorned to him by Chitister's directions, agreed to pay him the rent, it is a sufficient delivery of possession under the contract to enable the plaintiff to recover.

The court agreed in terms to the first, but added, " The facts must be clearly proved by the plaintiff; if left in doubt by the proof, the plaintiff must fail." I never liked the expression " clearly proved;" proof which satisfies a jury of the fact or facts is all that the law requires. If those present or parties to a transaction all state it in one way, talk of other people or their understanding goes for nothing; if this were not the case, nothing would ever be said to be clearly or fully proved.

To the second the court also said, " It is substantially true," but added, " the delivery must be an *actual, visible* delivery, and not a mere declaration by C. Landman that he delivered possession, unaccompanied by any entry of the plaintiff; and it may be proper to remember that Chitister was in possession by his tenant Gilmore, and that Gilmore continued in possession until the spring of 1831; and that there is no evidence of any actual delivery of possession except the mere declarations of C. Landman. These are evidence, but declarations do not amount to a delivery. The jury should be well satisfied when Chitister first authorized the tenant to pay the rent to the plaintiff, and if this was after the death of old C. Landman, it is not easily seen how Williams had possession before the death of C. Landman."

This embraces the main point in the cause. To begin with the last sentence; Chitister's testimony or admissions were not intended to favour Williams, but he says distinctly that he, on the day Williams took away the old man, threw up his bargain with the old man, and told him he might lift the rent towards his support; he also thinks he had no written lease to his tenant. Now, he never saw old C. Landman afterwards: but admit this, and it was quite immaterial when he says Gilmore the tenant knew what he told him. A parol lease can be transferred by parol with the property leased. There were three persons concerned and two contracts completed that day; old Mr Landman and Chitister agreed to rescind their written contract and to part from each other; this was on Chitister being paid $100. Williams agreed to pay this, and has paid it. Chitister then gave up all claim and

[Williams v. Landman.]

the rent to the old gentleman; of all this there is no dispute.   Old Mr Landman then agreed to give the land to Williams for supporting himself and his wife and burying them.   This, as far as the testimony of those present and the admissions of C. Landman can prove anything, is also fully proved; the credit of the witnesses is for the jury.   The only points then are, did Williams receive possession, and what is such possession as will avail?   In *Pugh* v. *Good*, (3 *Watts & Serg.* 56), the last case on parol sales, the purchaser, at the time of the purchase, agreed to lease a lot, part of the property purchased, to the vendor for one year to crop; and this was held to be such delivery of possession to the purchaser as made the sale valid.   And this court is of opinion that when Chitister rescinded his contract and told old Mr Landman to draw the rent, and Mr Landman transferred all his right to the land and rent to Williams, and this was made known to the tenant, who agreed to it and agreed to be the tenant of Williams, this was such delivery of possession as to avail the plaintiff.   The old fashion of livery of seisin by twig and turf, or the carrying the fire out of doors and bringing it back, although well enough as impressing the fact on the memory of witnesses, are neither of them essential.   If a landlord sells land which is under lease, and tells the purchaser the rent is to be his, and this is told to the tenant, who agrees to it, the purchaser is seised of the land, and the possession of the tenant becomes his possession so far as to pass the title to him.   This was the great point in the cause, and we all agreed on the law as stated here.   It would be useless to enter on the discussion of the nature of possession in a tenant, and how it is different from the possession of his landlord; for the purpose of affecting and supporting and preserving the landlord's title they are the same; the possession of the tenant is the possession of the landlord, and delivering possession to the tenant is delivering possession to the landlord; and Chitister's tenant, in pursuance of his agreement, attorning to old Mr Landman or his vendee Williams, was putting Williams in possession.

The third point related to the effect of improvements made by Williams after his first recovery, and the lapse of time before Adam renewed the suit.   There was also a bill of exceptions as to evidence on this subject.   Williams claimed the whole tract. After the recovery in 1831 of the whole, he cleared land and erected " valuable buildings," in the words of the offer.   When the inquest came to the ground on Adam's petition, and divided the farm, they allotted the part in dispute more immediately in this case as part A; this Adam chose.   Every witness says it was the best, and some say worth all the rest, &c. &c.; but the house built is not on part of though near to it.   The grubbing, fencing, &c., was principally or entirely on the part A.   The court permitted in this trial evidence of the work and clearing done on

[Williams v. Landman.]

part A; but would hear no evidence as to the buildings not on that part, though near it, and probably erected with a view to the occupation and ownership of it more particularly than any other part of the land.  We think there was error in rejecting this evidence; to be sure the value of the buildings may be the same whether on the 61 acres or not; but they may be so situated as to this part, and as to the rest of the farm, that they would be convenient with this and very inconvenient as to the other land, if this is lost.  The jury must judge of this.  I have remarked on the nature of a second trial in ejectment in a former part of this opinion, and shown that the weight of a former verdict and judgment ought to depend much on the case and nature of the dispute.  If the error was in matter of law, why the decision now ought to be on the law as correctly laid down; if on matter of fact, and the same witnesses state facts differently, unless they are supposed to have been unduly biassed, the presumption is they remembered more accurately while the transactions were recent, than after many years; if other witnesses make out a different case, the jury are to decide on the case before them.

Judgment reversed, and *venire de novo* awarded.