## Ross's Appeal.

A., having purchased the right of a vendee under articles, erected fixtures on the land which he afterwards sold to B., to whom he also transferred his interest in the land by parol: B. cannot set up as a defence to A.'s claim for the price of the fixtures, a judgment against A.'s vendor, which was entered after possession taken by A. under his agreement—which judgment was known to B. at the

time of his purchase of the fixtures; For, 1. It was no lien, because the interest had been transferred to A., and if a lien, B. might have severed before execution; and 2. He bargained for the fixtures as personalty, with knowledge of the existence of the judgment.

APPEAL from the Common Pleas of Philadelphia.

*Jan.* 18.   The question was the right of Lyman's assignee to a dividend of the estate of Marshall & Kellogg, who had assigned for creditors, which was resisted on the ground that there were prior liens on the property sold by Lyman, for the price of which, the claim was made.

The facts were these :—On the 14th of April, 1838, Patterson entered into an agreement for the purchase of a piece of land, to be paid for at the end of five years, secured by bond and mortgage.   He entered on the property, and partially built a furnace for making iron.   Some time afterwards, he agreed to transfer his interest to Lyman, who was to succeed to all his liabilities to the vendors.   Lyman took possession in the fall of 1838, and erected machinery for manufacturing iron, but the agreement to transfer was not executed by Patterson until 1839.   In 1840, Lyman made a bill of sale of all his fixtures, machinery, tools and goods on the land, to Marshall & Kellogg.   The price agreed upon was the claim in this case.   He also, by a verbal arrangement, transferred to them his interest in the land.

The defence was, that there were two judgments against Patterson: one March 1st, 1838, and one December 10th, 1838, which the assignee alleged were liens on the fixtures sold by Lyman. But it was proved that at the time of the purchase Marshall & Kellogg had knowledge of these judgments, and consulted counsel, who advised they were not liens.

The court decreed Lyman's assignee a dividend, and this appeal was taken.

*Brincklé*, for appellant.—Patterson had an estate in the land, and when the fixtures were put there, they were bound as part of the realty : 2 W. & S. 116 ; Ib. 390.   These liens caused a failure of consideration ; for when the assignee sold, they were liable to them, and hence they must be deducted: 1 S. & R. 438.

*C. J. Biddle* and *Haly*, contrà.—Patterson's title was of no value ; it was equitable, and nothing paid.   Such title is bound only to the extent of payment of the purchase-money.   But Marshall & Kellogg bought the fixtures as personalty, and not with the land. They could, therefore, have severed and avoided the lien.   These

fixtures were not liable to the judgment, for a purchaser who does not comply, has all the rights of tenant for years: 7 Cow. 321; 4 W. 33; 3 Atk. 13. Nor were the judgments liens: the one was before Patterson's purchase, and the other, after he had sold to Lyman.

*Jan.* 29. BELL, J.—The claim of Lyman's assignee to participate in the distribution of the fund in the hands of Marshall and Kellogg's assignee, springs from the contract of sale, evidenced by the bill of sale, as it is called, of the 15th of September, 1840. This claim is resisted by the appellant, because of an alleged failure of consideration, resulting from the supposed lien of the judgment recovered by the Miners' Bank of Pottsville against Burd Patterson, on the 10th of December, 1838. This lien, it is assumed, affected, in the hands of the purchasers, the machinery and other fixtures attached to the furnace and engine-house by Lyman, after his agreement with Patterson. The objection, it will be perceived, does not embrace the whole of the appellee's demand, since a part of it arises from the sale of chattels which in no aspect can be considered as having been parcel of the freehold, at any moment of time. The question is, therefore, narrowed down to such portions of the articles enumerated in the schedule accompanying the bill of sale, as, being annexed to, might, under certain circumstances, be regarded as part of the realty.

In Pennsylvania, it is indisputable that a lien or encumbrance on lands sold may furnish the vendee a defence *pro tanto*, in an action for purchase-money, even after conveyance made. It is settled, too, that chattels affixed to the freehold, for the time, so far partake of its nature as to pass by a judicial sale of the land to enforce payment of the lien. But as such things may be again disjoined by the owner of the freehold, and thus restored to their original character of personal chattels, there is nothing in the law prohibiting a sale of them as personalty. In the absence of fraud, parties so treating them, with a knowledge of the circumstances that attend them, necessarily assume any risk consequent upon their present relation. As between such parties, they are to be regarded as dissevered. This, as a general rule, results from the nature of what is technically denominated a fixture, though capable of amotion. Primarily a thing personal, it becomes for some purposes, in legal contemplation, incorporated with things real by simple annexation, and may, while this continues, be the subject of an estate in, or an encumbrance on lands. But it sustains this

2 T

character only so long as the connexion lasts.    The moment it is dissolved by a complete severance, this artificial character is dropped, and, as a moveable, it again assumes its natural relations.    Take, for illustration, the rolls used in a rolling-mill.    These, in Voorhis v. Freeman, 2 W. & S. 119, and Pyle v. Pennock, Ib. 390, are affirmed to be parcel of the mill, and to pass by a sale of it.    But can it be doubted that a disunion and sale of them, as moveables, would pass them to a purchaser, freed of the lien of a judgment? It may be said the roll is but a small part of the machinery of a rolling-mill, and to be regarded rather as a tool than a fixture. But the cases determine differently, and the principle they establish shows that the right to disannex depends not, in any degree, on the size or weight of the fixture.    Steam-engines and other ponderous machines used in manufactories are, for the advancement of trade, constantly treated as chattels : Lemar v. Miles, 4 W. 330; and in Van Ness v. Pacard, 2 Pet. 137, the right of removal was extended to a wooden dwelling-house, with a walled cellar and brick chimney, erected by a dairyman, for the purpose of carrying on, more advantageously, his occupation.    It is true, these were cases between landlord and tenant.    But in a case decided at our last session in Pittsburgh, this doctrine was, with the approbation of the whole court, conceded as being applicable to a cast-iron blowing cylinder, placed in a furnace by the tenant of the fee.    True, it was there held the cylinder passed to the purchaser, at a sheriff's sale, as appurtenant to the furnace, but this was because the previous private purchaser had neglected to remove it before the sheriff's levy. The doctrine to which I have adverted will, I think, be found entirely consistent with the decision in Gray v. Holdship, 17 S. & R. 413.

But apart from this, and under the ordinary principle of *caveat emptor*, I think it may be safely affirmed that one who *knowingly* purchases and agrees to pay for fixtures, as ordinary articles of merchandise, capable of being made so, and afterwards enters upon the possession and enjoyment of them, though still annexed to the land, shall not be permitted, when called on for payment, to shelter himself under the allegation that they are, in their legal character, other than he agreed to consider and treat them at the time of his contract.    Suppose the common case of the owner of a mill or other factory encumbered by lien, who rents the mill and sells to the lessee the machinery and other fixtures as personal chattels, and which the latter agrees to accept as such.    Could he, after enjoyment under his purchase, set up the outstanding encumbrance as a

bar to the recovery of the purchase-money? Certainly not. But it will presently be seen that, in the present case, we are not called on to go even so far as this.

The evidence puts it beyond controversy, that here the contracting parties considered the sale of the articles enumerated in the bill of sale, as something entirely distinct from and independent of the arrangement respecting the transfer of the island; the subject of the one being regarded as personalty, of the other, as realty. Upon this basis, they negotiated and arrived at their conclusions. This is established as well by the language of the bill of sale as by the testimony of the leading witness, Mr. Marshall, who said, "Marshall & Kellogg purchased from Lyman, in the month of September, 1840, certain goods mentioned in a bill of sale to them, dated, &c., which contains all the goods sold to Marshall & Kellogg by Lyman, and contains the whole agreement between the parties, in relation to the sale of those goods." "The fixtures and other things, on the island, are a part of the articles contained in the bill of sale. Marshall & Kellogg were to have the island on the same condition that Lyman was to have it from the owner—by paying the purchase-money of eight thousand dollars in five years." "We talked to the owners of the island different times, and we could have had the island by paying the purchase-money." "Marshall & Kellogg purchased the interest of Mr. Lyman in the island by verbal understanding. We were to step in Lyman's shoes, and take it exactly as he had it, pay the purchase-money, and receive the title from the owners." In truth, Lyman undertook to *sell* nothing to Marshall & Kellogg but that which he had himself placed upon the island, or acquired elsewhere. He pretended no pecuniary interest in the land; for neither he nor Patterson had paid any part of the purchase-money, or secured its payment, under the agreement with Starr. Patterson, it is true, had a bare equity, which might be the subject of lien; but, in point of value, it was but an interest in the contract of sale, capable of being perfected into an estate by payment of the purchase-money. This was all he could transfer to Lyman, and this was all Lyman undertook to pass to Marshall & Kellogg. Indeed, it is perfectly apparent that from the beginning, the fixtures and the land were regarded as the property of different owners. They were so treated by Patterson and Lyman, and, as has been seen, so contracted for by Lyman and his vendees. That the latter might never acquire a legal title to the island, must have been in the contemplation of the parties as possible; but it could not have been thought that a failure to

do so, would affect their right of property in machinery purchased as personalty. And in this they were right, if the case of Raymond v. White, 7 Cow. 319, be law. There a machine, called a heater, was introduced into a tannery by an equitable purchaser, who afterwards failed to fulfil the conditions of sale, by payment of the purchase-money, and abandoned the land. Conceding the heater to be a fixture, it was held—Chief Justice Nelson delivering the opinion of the court—that an equitable vendee, who failed to perform his covenant, was to be considered as a tenant for years, or at the will of the vendor; and, as such, might remove a fixture, and consequently it was liable to be levied on and sold at the suit of an execution-creditor, though remaining in its original position.

Under the circumstances at which I have glanced, Marshall & Kellogg took possession of the articles sold by Lyman, and continued in the enjoyment of them, up to the time of their assignment to the appellant, into whose hands they passed by virtue of the assignment. If not sold—and on this head the record is not explicit—they are still held by him, and his possession and title is undisturbed and unchallenged by any one. Looking to this fact, in connexion with the contract of sale, it is difficult to imagine upon what ground the objections raised by the appellant could be sustained.

But did the question raised in this case regard alone the land which Starr and his associates agreed to sell to Patterson, the appellant's position would be found untenable.

All the decisions, and particularly Hart v. Porter, 5 S. & R. 203; Friedly v. Scheetz, 9 S. & R. 163; Lighty v. Shorb, 3 Pa. 447; Moore v. Shelly, 2 W. 256, and Stroop v. Ransom, 10 Ib. 297, show that the doctrine of Steinhauer v. Witman is not of universal application. The rule there recognised, does not extend to those cases where it is expressly stipulated or shown by circumstances to be the understanding of the parties, that the vendee was to take upon himself the risk of a defect of title or the existence of an encumbrance. Now, Marshall swears, that at the time of their contract with Lyman, his firm had notice of the judgments recovered against Patterson, but not deeming them to be liens on the land, he disregarded them. It is obvious from this, that neither of the parties imagined that Lyman had engaged to warrant his vendee's title either to the land or the fixtures. Marshall & Kellogg undertook to decide for themselves, whether the judgments were or were not encumbrances; and never dreamed of looking to Lyman to guaranty them against a mistake, in this particular.

But apart from the direct proof, the nature of the transaction shows this to have been so. The case presents the uncontradicted fact, that Marshall & Kellogg were to take the place of Lyman, as purchasers from Starr and others. As already said, Lyman intended to do nothing more than to transfer to them his interest, whatever it was, in the contract. Why, then, should he be made answerable for encumbrances not suffered by him, any more than for a defect of title ? The very character of the agreement repels such an idea, as is shown authoritatively by Smith v. Sillyman, 3 Wh. 589. In that case, where there was a similar arrangement, it is truly said the presumption is irresistible, in the absence of express stipulation, that the vendee relied on his own judgment, as to the soundness of the title. The same presumption is applicable to an encumbrance. Such an agreement amounts to a declaration by the vendee, that he takes the property just as his vendor received and held it, and subject to all defects or hindrances not created by the latter.

But another aspect of the case is hostile to the appellant's pretensions. Of the two judgments shown by the paper-book to have been recovered by the Miners' Bank of Pottsville v. Burd Patterson, one was rendered on the 1st of March, 1838. The agreement between Starr and Patterson, for the transfer of the island, was on or after the 14th of April, 1838, and was, of course, after acquired property, aliened before execution. But the appellant does not pretend this to be a lien. He points to the second judgment as the encumbrance. This was recovered on the 10th of December, 1838. Now, according to the testimony of Mr. Patterson and Andrew Russell, the former contracted to sell to Lyman in September or October, 1838, when Lyman actually took possession and commenced his improvements. This was the inception of Lyman's title or interest, which might have been bound by a judgment recovered against him any time after that period : Richter v. Selin, 8 S. & R. 440 ; Pugh v. Good, 3 W. & S. 56. From this moment he acquired all the equitable interest which before had resided in Patterson, and became liable for the purchase-money to the original vendors. The subsequent written agreement of the 30th of April, did not disturb this interest or operate to postpone the time when it vested. If it be considered as a second contract, it may have worked a cancellation of the first, so far as they were inconsistent ; but it would not have the effect of reinstating the equitable interest of Patterson, so as to let in the lien of the judgment. That interest remained in Lyman by virtue of

the prior contract, up to the moment of the execution of the second, under which it passed *eo instante*, leaving neither time nor room for the intrusion of the judgment. It was, in truth, but a mere alteration in the terms of the sale, like the striking out of an old clause, or the insertion of a new one, in a written agreement, which would not, of course, disturb the interest first acquired. If the writing was but the visible expression of the verbal agreement, then its operation is to be referred to the date of the latter, and the option given by it being exercised affirmatively, served to confirm the inchoate interest conferred by the conditional bargain, possession, and improvements.

Decree affirmed.

Since this opinion was prepared, both parties have presented a written statement, agreeing the fixtures have been sold by the appellant as the property of Marshall & Kellogg. This fact, of course, strengthens the claim of the appellees.