## Little, Appellant, *v.* Thropp.

*Mortgages—Purchase money mortgage—Defenses—Affidavit of defense—Supplemental affidavit—Equitable· defenses—Insufficient averments—Fraud—Averment of title—Covenants.*

1. Although there is no rule that a supplemental affidavit of defense is to be confined to an explanation of the original and cannot set up a new and different defense, such a course is suspicious and requires that the new defense should be closely scrutinized.

2. If fraud is relied upon as a defense, the affidavit of defense must state specifically and at length in what it consists; the facts constituting the defense must be stated; and must be positively averred to exist.

3. Being "in possession" and "paying taxes" do not in themselves, without more, constitute title to land, or justify an inference of title.

4. From fiduciary grantors the grantee is entitled to no covenants except that the grantor has done no act to encumber the estate. When used by trustees the words "grant, bargain and sell" imply no personal undertaking.

5. While it is established that if consideration money for a purchase of real property has not been paid, the purchaser unless it plainly appear that he had agreed to run the risk of the title, may defend himself in an action for the purchase money by showing that the title was defective, either in whole or in part, whether or not there was a covenant by the vendor of general warranty, or of the right to recover, or of quiet enjoyment, and it is not necessary in all instances that there be an actual eviction to entitle one to the defense referred to, yet where the defendant continues to hold possession and this equitable defense is relied upon, he must show that

the title he has accepted was positively bad, and that there was a superior and indisputable title in another person asserting such title.

6. In a proceeding to recover the balance due upon a purchase money mortgage, an original and supplemental affidavit were filed, setting up the defense that the mortgage in question was given for part of the purchase money of a large tract owned by the plaintiffs; that when the defendant attempted to take possession he found other persons in possession and claiming title to large portions of the land embraced within the deed, and claiming to be the owners of the legal title thereto, and also claiming to have a superior title to that of the defendant, and that these claims were the subject of actions of ejectment then pending; but without stating under what right those alleged to be in possession respectively claimed, or when they took, or how long they had held such possession; that the land covered by these claims was "of a value equal to, or nearly equal to, the amount that remained unpaid upon the mortgage"; and that the defendant "had reason to believe" that the title of such claimants was superior to his own and that the plaintiffs knew at the time of the sale that their title was defective and that such claimants were "in possession and paying taxes" and that the plaintiffs had fraudulently concealed these facts from the defendant and fraudulently represented to him that they had a good title. The allegation of fraud was supported by no averments of specific facts which would constitute the offense charged or give rise to an inference of fraud. It appeared that the mortgage was entered into by the plaintiffs as trustees of a bankrupt corporation, that the deed contained no covenant of general warranty, that it granted the property without metes or bounds or precise location of any kind, and contained the clause "together with all the estate, right, title, interest, property, claim or demand whatsoever, of them the said grantors in law, equity or otherwise," and that years after the delivery of the deed the defendant had paid a large sum on account of the mortgage. The affidavits also failed to describe in any definite way the precise lands as to which defendant claimed a failure of title or to place a value upon each of the several pieces of land so claimed and further failed to state whether the value alleged was estimated at the time of the purchase or the date of the pleading and contained no averment of an actual eviction. *Held,* that plaintiff was entitled to judgment for want of sufficient affidavit of defense.

Argued April 21, 1914. Appeal, No. 64, Jan. T., 1914, by plaintiff, from order of C. P. Huntingdon Co., Feb. T ,

1913, No. 21, discharging rule for judgment for want of sufficient affidavit of defense in case of Henry C. Little and Charles B. Peabody, Trustees for the Bondholders of the Broad Top Coal & Iron Company, v. Joseph E. Thropp. Before FELL, C. J., BROWN, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Scire facias sur mortgage. Before WOODS, P. J.
The opinion of the Supreme Court states the case.

*Error assigned* was in discharging plaintiff's motion for judgment for want of a sufficient affidavit of defense.

*John D. Dorris* and *A. L. Cole,* for appellants.—The defendant having admitted that he voluntarily made a payment on account of the principal of the mortgage debt, and the interest on the mortgage for three years after its last payment was due, after he had knowledge of the adverse possession of third parties, the defense of fraud cannot avail him: Hilliard v. Wood Carving Co., 173 Pa. 1; Lauer's Appeal, 12 W. N. C. 165; Howard v. Turner, 155 Pa. 349; Wright v. Peet, 36 Mich. 213; Leaming v. Wise, 73 Pa. 173; Acetylene L., H. & P. Co. v. Smith, 10 Pa. Superior Ct. 61; Straight v. Wilson, 176 Pa. 520; Clay Commercial Telephone Co. v. Root, 17 W. N. C. 200; Sterling v. Insurance Co., 32 Pa. 75; Eichman v. Hersker, 170 Pa. 402.

The burden was upon the defendant either to restore the plaintiff to possession, or pay the purchase money: Hersey v. Turbett, 27 Pa. 418; Bradford v. Potts, 9 Pa. 37; Barnes v. Transue, 2 Legal Record Reports 116.

*H. H. Waite,* with him *A. L. Little,* for appellee, cited: Seitzinger v. Weaver, 1 Rawle 377; Cathcart v. Bowman, 5 Pa. 317; Wilson v. Cochran, 46 Pa. 229; Poyntell v. Spencer, 6 Pa. 254; Sager v. Patterson, 15 Pa. Superior Ct. 147; Comegys v. Davidson, 154 Pa. 534; Lloyd v.

Farrell, 48 Pa. 73; Larkin's App., 38 Pa. 457; Lawrence
v. Luhr, 65 Pa. 236.

OPINION BY MR. JUSTICE MOSCHZISKER, May 22, 1914:
The plaintiffs sued to recover the balance due upon a
purchase money mortgage, and the defendant filed an
affidavit of defense; the sufficiency of the latter was at-
tacked on a rule for judgment, and this appeal is from
an order refusing to make such rule absolute.

The scire facias states that the mortgage sued upon
was dated November 10, 1907; that it was given by the
defendant to the plaintiff, "as trustees for the bond-
holders of the Broad Top Coal & Iron Co.," for the prin-
cipal sum of $47,775; that, although the time for the
payment of the principal had "long since elapsed," only
$5,000 had been paid thereon, and the balance, with in-
terest from November 1, 1912, was due and unpaid. The
defendant averred that on "November 1, 1907, he pur-
chased from the plaintiff certain real estate situated in
the counties of Huntingdon and Bedford," for $97,500,
all of which was paid in cash except the amount secured
by the mortgage in suit; that subsequently he paid
$5,000 on account of this mortgage, and interest to No-
vember 1, 1912; that the property was described in his
deed as follows: "All the real estate in Huntingdon and
Bedford Counties, in the State of Pennsylvania, contain-
ing 2,778 acres more or less, with all personal property,
corporate rights and franchises formerly belonging to
the Broad Top Coal & Iron Co., which are now held by
said trustees, being the same premises which......trus-
tees in foreclosure proceedings of the lands and fran-
chises of the Broad Top Coal & Iron Co., by deed dated
May 27, 1869, and recorded......conveyed to......as
trustees for the bondholders......under a certain decla-
ration of trust......recorded......, and reference is
hereby made to said deed or the record thereof for a full
and particular description of the premises hereby con-
veyed or intended so to be"; that at the time, the "said

plaintiffs represented to affiant" the land contained "2,800 acres"; that when the defendant "attempted to take possession......he found there other persons in possession and claiming title to large portions of the land embraced within the deed......claiming to be the owners of the legal title thereto and also claiming to have a superior title to that acquired by the affiant"; that one of these persons claimed "200 acres of land which is included in the deed of plaintiffs to affiant," another "343 acres," and another, "120 acres" "embraced within the description of the land sold by plaintiffs to affiant," another, 101 acres "covered by said mortgage"; that he (the defendant) has brought an action of ejectment against the first of these claimants at February Term, 1913; that the other claimants had either brought similar actions against him at May Term, 1913, or had threatened so to do; that the land covered by these claims "is of a value equal to or nearly equal to the amount that remains unpaid on said Mortgage"; that the defendant "has reason to believe the title to the lands claimed......is superior to that which was acquired by affiant by deed from the plaintiffs"; that the latter knew at the time they made the sale to him "that their title was defective," and that these several claimants "had superior titles......and were in possession......and had been paying taxes"; that "they (the plaintiffs) fraudulently concealed these facts from the affiant and fraudulently represented to the affiant at the time they sold the land to him that they had a good and marketable title thereto"; and that he (the defendant) had no knowledge at that time that these several parties claimed a superior title; finally, the defendant avers that he "has reason to believe" the respective claimants will succeed in their assertions of title; but adds, that if they should not, then he would pay the balance due on the mortgage, and suggests that, in the meantime, it would be inequitable and unjust to compel him so to do.

An original and a supplemental affidavit of defense

were filed; but the averments of fraud appear only in the last. "There is no rule that a supplemental affidavit of defense is to be confined to an explanation of the original and cannot set up a new and different defense; such a course, however, is suspicious and requires that the new defense should be closely scrutinized": Callan v. Lukens, 89 Pa. 134. While the second affidavit avers fraud in a general way, yet, it states no specific facts which in themselves would constitute the offense charged; furthermore, the defendant does not say directly, or aver facts from which the inference could be drawn, that the person who "fraudulently represented that they (the plaintiffs) had a good and marketable title," made the representation when acting as trustee, nor does he aver just what, in point of fact, the plaintiffs, or either of them, really said or did that constituted the alleged fraudulent representations or concealment. "To different minds, different acts might be considered fair or fraudulent; hence, the necessity of the rule which requires that an affidavit of defense shall state specifically and at length the nature and character of the defense, so that the court may be able to see that there is a defense that calls for a trial; if fraud is the defense, it must appear in what it consisted......the facts constituting the defense must be stated......So too the facts must be positively averred to exist......." (Sterling v. Mercantile M. I. Co., 32 Pa. 75, 77.) In the affidavits before us, not only are these particular facts not presented, but, as we shall later point out, the facts essential to prove the alleged outstanding superior titles are not adequately averred. In this connection, it may not be out of place here to note, that being "in possession" and "paying taxes" do not in themselves, without more, constitute title to land, or justify an inference of title. For the reasons stated, the defendant's allegations of fraud must be dismissed; and, therefore, that element is out of the case.

The question of fraud being removed, we come to the

averments concerning the deed and its covenants; and to a consideration of the breaches alleged, with the defendant's rights thereunder. Neither of the affidavits of defense gives a copy of the deed; but reference is made thereto, stating its place of record, and the appellants print the instrument in their paper-book. Since both sides presented the case to us upon the basis of a profert of the deed as a whole, we shall treat it accordingly. To begin with, this is a deed from trustees, and the only covenant as to title which it contains is the usual special one against acts done or committed by the grantors themselves. "From fiduciary grantors......the grantee is entitled to no covenants but that the grantor has done no act to encumber the estate": Fallon's Pa. Law of Conveyance, p. 193; Williams' Real Property (6th Ed.) 447; Shontz v. Brown, 27 Pa. 123, 134. The words "Grant, bargain and sell," with us, under the Act of May 28, 1715, (1 Smith's Laws 94) simply amount to a special covenant "That the grantor has done no act, nor created any encumbrance, whereby the estate granted by him might be defeated; that the estate was indefeasible as to any acts of the grantor......The act intended to give the vendee the benefit of two distinct covenants; a covenant of seisin as regards defeasibility from the acts of the vendor, and a covenant for quiet enjoyment against disturbance by the vendor and those claiming under him": Fallon, supra, p. 196; Gratz v. Ewalt, 2 Binney 95; Seitzinger v. Weaver, 1 Rawle 377, 382-385; Knepper v. Kurtz, 58 Pa. 480, 484; Waslee v. Rossman, 231 Pa. 219, 228. Also see, Rawle on Covenants, etc., 489-90. When used by trustees, the words "grant, bargain and sell imply no personal undertaking": Shontz v. Brown, supra, 134. The deed under consideration contains no covenant of general warranty, and the defendant does not aver any act done by the plaintiffs that would tend to impair his title or disturb his possession. In fact, the affidavits of defense do not state under what right those alleged to be in possession respectively claim,

or when they took, or how long they have held such possession; the defendant not only fails to aver the character of the title of these claimants, but he does not even go so far as to aver his belief that any of them has one superior to his own, the utmost length to which he goes in this respect is the statement that "he has reason to believe" that their titles are superior, and for aught that appears, his "reason" may have no justification at all. Hence, if the affidavits be viewed as though they were a declaration in an action upon the special covenants contained in the deed, or implied by its grant, the defense averred fails. But, the appellee claims the benefit of a special rule of law, established in this state, to whose advantages every defendant in an action to recover purchase money is entitled as a matter of right, when he properly presents a good defense of failure or partial failure of title. This rule is stated in the leading case of Steinhauer v. Witman, 1 S. & R. 437, 441, by Chief Justice TILGHMAN, as follows: "A distinction has been established between purchasers who have paid, and who have not paid the purchase money, those who have paid, have no relief, (where they only have a covenant of special warranty and the facts do not bring the case within such covenant); but those who have not paid, are relieved in a case of eviction or manifest failure of title." That was a suit upon a purchase money mortgage, and the mortgagor was permitted to prove that he had been evicted from a part of the premises by a paramount title. In Cross v. Noble, 67 Pa. 74, 78, Judge SHARSWOOD says, "The doctrine of Steinhauer and Whitman is, that if the consideration money has not been paid, the purchaser, unless it plainly appear that he had agreed to run the risk of the title, may defend himself in an action for the purchase money, by showing that the title was defective, either in whole or in part; whether there was a covenant of general warranty, or of the right to recover, or quiet enjoyment, by the vendor, or not."

It is not necessary in all instances that there be an

actual eviction to entitle one to the defense referred to in the cases just cited; furthermore, the defense in question prevails whether the suit be a direct action for purchase money, or one instituted on a purchase money obligation (Sager v. Patterson, 15 Pa. Superior Ct. 147, 150). But where the defendant continues to hold possession, and this equitable defense is relied upon, he must offer to show "that the title he had accepted was positively bad, and that there was a superior and indisputable title in another person, asserting such title": Bradford v. Potts, 9 Pa. 37. In speaking upon this subject, in Ludwick v. Huntzinger, 5 W. & S. 51, 58, KENNEDY, J., said, "The right of the plaintiffs to demand and receive the amount of the (purchase money) obligation is a perfectly clear legal right ...... whereas the defense set up is only an equitable defense, and before it can prevail must be made out by evidence tending to prove it clearly and distinctly ...... It is not sufficient, in such a case, to offer to give evidence merely to show that the title which the purchaser has got is doubtful, or not merchantable, but he must show that it is positively bad, by proving a superior indisputable title to the land in another person, who is asserting his right thereto by virtue of such title...... In order to make such outstanding title a good defense......it must be clearly shown to be indisputably, good, and that the land is actually claimed under it." Also see, Crawford v. Murphy, 22 Pa. 84, 87, and Rawle on Covenants for Title, p. 67. Here, the defendant offers no such defense as required by these authorities, and upon that ground alone we might hold his affidavits insufficient.

But, since the amount involved is large, and we feel obliged to enter a final judgment for the plaintiff, it seems proper to call attention to other material weaknesses in the defense, as averred. The deed at bar grants the property it purports to cover without metes or bounds, or precise location of any kind; and while it refers to a former deed for a fuller description, yet, it

nowhere appears upon the record that this other instrument contains a more detailed description than the one before us. In the present conveyance, however, we find these significant words, "Together with......all the estate, right, title, interest, property, claim and demand whatsoever of them, the said grantors, in law, equity or otherwise;" and it appears that the grantors were mere trustees appointed in a foreclosure proceeding to take over the assets of a corporation. When the facts averred are viewed as a whole, they strongly suggest this as an instance of the purchase of whatsoever rights the plaintiff trustees might have had in the premises, rather than of certain defined pieces of real estate; particularly is this the case when we consider the form of the deed, and that, admittedly, years after its delivery, at a time when there is no pretense that the affiant did not know all the facts now depended upon as a defense, he paid $5,000 on account of the purchase money, with interest on the mortgage to November 1, 1912. In other words, the circumstances, as they appear, indicate that what the defendant bargained for, was not a good title to all property comprehended by the general description in his deed, but such "right, title, property, claim and demand" as these plaintiffs had in the premises; and we find no direct averment in the affidavits that this was not the case, or that the defendant would not have made the purchase had he been fully informed of the facts relating to the alleged partial failures of title concerning which he now attempts to complain. It looks strikingly like an instance where the purchaser took the risk of title, "being presumed to have been compensated in the collateral advantages of the bargain." (See Seitzinger v. Weaver, 1 Rawle 377, 384; Ludwig v. Huntzinger, supra; Ross's App., 9 Pa. 491, 496; Crawford v. Murphy, supra, 87; Murphy v. Richardson, 28 Pa. 288, 292; Youngman v. Linn, 52 Pa. 413, 416, 417.)

Moreover, there is no averment whatever describing in any definite way just what property the defendant

claims to have purchased, or the precise lands as to which he alleges a failure of title. True, the defendant states that the several pieces of land claimed by others were "embraced within his deed"; but this is merely the averment of a conclusion. The defendant should have outlined the property he believed to be covered by his deed, and then pursued the same course regarding the particular pieces of land as to which he attempts to assert a failure of title; the court would then have been in a position intelligently to pass upon and adjudicate the merits of his defense. If, as suggested, the actual facts of description were averred, they might show some of the latter tracts to be "embraced" within the land sold to the defendant and others not. As the matter stands, we have no way of knowing what the actual facts are, or what they would tend to prove. It is not necessary for a defendant to state the evidence he proposes to produce, but it is essential that he should unequivocally aver the facts upon which he relies (Sterling v. The Mercantile M. I. Co., 32 Pa. 75, 77); and this the present defendant has not done.

The affidavits of defense present another material insufficiency, and that is in the averment concerning the value of the property alleged to be claimed by others; instead of placing a value upon each of the several pieces of land, the defendant makes a general averment that all of them put together are of a value "equal to, or nearly equal to, the amount that remains unpaid on such mortgage." Such an averment is totally insufficient in a case of this character; for, it might well be, if the facts were properly stated, they would show a defense as to certain pieces and not as to others. Again, the averment in question is bad, because it fails to state whether the value alleged is estimated as of the time of the purchase, or as of the date of the pleading, nearly six years later. "The standard of damage is the value of the land at the time of making the contract," or purchase (Rawle on Covenants for Title, p. 73; Bender v.

Fromberger, 4 Dallas, 436, 445; Cathcart v. Bowman, 5 Pa. 317, 319).

Finally, the presumption of law is that, in the absence of fraud, all prior conversations, understandings or dealings concerning the subject matter of the purchase were merged in and satisfied by the deed accepted by the defendant: Seitzinger v. Weaver, 1 Rawle, 377, 384. The affidavits of defense aver a "breach of the covenants of warranty contained in the aforementioned deed," but, as before stated, the deed has no covenant of general warranty; if it had, however, under the circumstances disclosed at bar, the defendant would be obliged to aver an actual eviction; and his assertion that he had been "dispossessed substantially," would not be sufficient: Wilson v. Cochran, 46 Pa. 229; Stewart v. West, 14 Pa. 336, 339; Clarke v. McNulty, 3 S. & R. 364, 371.

We have gone into this case at some length, in order to point out the numerous material weaknesses in the affidavits of defense, which render them insufficient to prevent judgment: when able counsel have had two opportunities to state a defense, and have not succeeded in properly averring facts sufficient for that purpose, it strongly suggests the probability that there is no substantial answer to the plaintiff's cause of action, and this presumption is strengthened in the present instance by the circumstance that, although more than six years have elapsed since the defendant's purchase, yet, during that time, no effort seems to have been made by him to speed a final legal determination of any of the alleged outstanding claims upon his title.

The assignment of error is sustained; the order of the court below is reversed, and judgment is here entered for the plaintiff; the damages to be assessed when the record is returned to the Common Pleas.