# C. B. Howard & Company *v.* Innes.

*Contracts—Sales of real estate—Statute of frauds—Memorandum—Sufficiency—Oral agreements—Conflicting evidence—Case for jury.*

1. Orally to identify the subject-matter of a contract for the sale of real estate, referred to in a written instrument by general description or through the medium of a recognized name, is essentially different from an attempt by parol evidence to determine and define the subject-matter itself; in one case the name or description is simply applied to the thing in view, while in the other the thing itself is established.

3. In an action to recover hand-money paid by plaintiffs to defendant under a contract for the sale of real estate, it appeared that plaintiffs refused to take title, alleging that the deed which defendant had tendered did not comply with the requirements of the contract. Defendant's counterclaimed for damages for the refusal of plaintiffs to comply with the agreement. Defendant contended that the contract was in writing and offered in evidence a letter signed by plaintiffs and addressed to defendant, reading "Referring to our conversation over the 'phone yesterday in regard to the thirty thousand acres on the head waters of the Elk river in

West Virginia which our Mr. Kaye purchased from you last Monday, we think it would be a good plan for our Mr. Kaye to go along with you to Elkins next week, as we are anxious to get all the maps and descriptions of the deeds and rights of way belonging to all your holdings in these lands as soon as possible, so we will have plenty of time to examine same before we sign the final detailed agreement which you are making." It appeared that the property dealt with consisted of a great number of separate tracts some of which defendant owned and on some of which he held options. The acreage of certain of the tracts was uncertain, and the title to others was in dispute. *Held,* that the references to the land in question were inadequate to identify the property intended to be conveyed and that the writing was insufficient to meet the requirements of the statute of frauds of West Virginia where the land was located, which was practically the same as the statute of frauds of Pennsylvania, and that defendant could not, therefore, recover damages for plaintiff's alleged breach of the contract.

3. Where in such case the evidence as to the terms of the contract was conflicting and plaintiffs' evidence tended to show that the contract was induced by misrepresentations as to the extent of defendant's holdings, but where such evidence was denied by the defendant, the question of fraud was for the jury, and a verdict and judgment for defendant for costs was affirmed.

Argued March 14, 1916. Appeals, Nos. 165 and 149, Jan. T., 1915, by plaintiffs and defendant, from judgment of C. P. Bradford County, Feb. T., 1912, No. 215, on verdict for defendant, in case of Josiah Howard, Henry Auchu and Joseph Kaye, Copartners, doing business under firm name of C. B. Howard & Company, v. John A. Innes. Before MESTREZAT, POTTER, STEWART, MOSCHZISKER and FRAZER, JJ. Affirmed.

Assumpsit to recover hand-money paid under a contract for the purchase of real estate. Before WALLING, P. J., specially presiding.

The opinion of the Supreme Court states the facts.

Verdict for defendant for $3,547.20, which was subsequently reduced by the court to a verdict for costs only, upon which judgment was entered. Plaintiff and defendant appealed.

*Errors assigned,* among others, were various rulings on evidence and instructions to the jury.

*Seth T. McCormick* and *C. A. LaRue Munson,* with them *John C. Ingham* and *Charles M. Culver,* for C. B. Howard & Company.

*J. Roy Lilley,* with him *William P. Wilson* and *T. S. Hickok,* for John A. Innes.

Opinion by Mr. Justice Moschzisker, May 15, 1916:

This was an action to regain the hand-money paid on an alleged contract for the purchase of certain timber lands; on a plea of set-off, a monetary verdict was rendered for the defendant, but this was reduced to one for costs only; both sides have appealed.

The plaintiffs' statement averred they were copartners; that in January, 1905, the defendant claimed to be the owner of contiguous tracts containing over 30,000 acres of valuable timber land in the State of West Virginia, which he had placed in the hands of W. H. Cobb, as agent, "with full power and authority to sell and dispose of the same"; that in December, 1905, Cobb notified the plaintiffs he had this land for sale, and it would cut certain stated quantities of timber per acre, 90 per cent. thereof being hemlock and spruce and the balance poplar and hardwood; that Cobb "invited the plaintiffs to inspect the land and timber with a view to purchase same"; that, in response, agents of the plaintiffs visited the land, and were "furnished with one James Gibson as a guide to take them over the ground and inspect the timber," who "pretended to point out to them the boundaries of said 30,000 acres"; that, "relying upon the information thus obtained and the representations thus made," the plaintiffs decided to purchase the tract, and for this purpose Joseph Kaye, on January 15, 1906, visited the defendant, who "reiterated the statements made by his agent, W. H. Cobb, Esq., to the effect that he was

the owner of a contiguous tract of land......the area of which would exceed 30,000 acres, that for 18,000 acres he had a good title in fee simple, and owned the timber rights for the balance"; that "relying upon these representations of the defendant, and upon the acts and representations of his agents, Cobb and Gibson, in pointing out to them the alleged boundaries of said tract, the plaintiffs then and there verbally contracted to purchase and the defendant contracted to sell said timber tract of 30,000 acres, at and for the sum of $28.00 per acre; and the plaintiffs then and there paid to the defendant on account of the said purchase-price the sum of $10,000.00, receiving his receipt, as follows: 'Canton Pa., Jan. 15, 1906. Received from C. B. Howard & Company ten thousand dollars to apply on purchase of West Virginia lands, price to be $28.00 per acre. Details of agreement to be further completed. (Signed) John A. Innes'"; that the plaintiffs had the land surveyed and the titles examined, when it was discovered (1) that the acreage was far short of the amount stated by the defendant and his agents, (2) that the lands owned by the defendant were not contiguous but broken up into 48 separate tracts, (3) that the timber upon these tracts fell far short of the amount alleged by the defendant and his agent, Cobb, (4) that the boundaries pointed out by the other agent, Gibson, "were false and fraudulent and included lands owned by other parties," and that those "shown to the plaintiffs by said James Gibson containing the fine growth of timber, the existence of which was the chief inducing cause to said plaintiffs for making of said contract of purchase, did not belong to the defendant"; that the plaintiffs thereupon called on the latter to fulfill his contract according to its letter, and, in response, on May 1, 1906, he tendered a deed for 24,-000, instead of 30,000, acres, "which said acreage was not contiguous and did not include the heavily timbered land shown to the plaintiffs"; further, that the deed contained a stipulation "that as to any failure in acreage

or title of the 24,000 acres attempted to be conveyed thereby the plaintiffs should only be entitled to deduct the pro rata amount of purchase-money due thereon at $28.00 per acre"; that the plaintiffs refused to accept this deed and immediately notified the defendant the contract was rescinded, demanding the return of the $10,000 paid on account; that they had expended $2,500.00 in making suitable preparations to carry out the contract; finally, that the representations of the defendant and his agents were false and fraudulent, and made with the intention to cheat and defraud the plaintiffs; wherefore they claimed to recover the above indicated $12,500.00, with interest from January 15, 1906.

The defendant filed an affidavit of defense, in which he denied that "either he or his agent, W. H. Cobb, represented to plaintiffs......that defendant had more than 30,000 acres of valuable timber land......, but told the plaintiffs that he had, by deed or contract, ......about 29,000 acres, and option on about 3,600 or 3,700 acres more"; that "plaintiffs......stated to the defendant all the land they would take of him was the 29,000 acres ......and if they wanted the 3,600 or 3,700 acres...... they would buy it directly from the owners themselves." The defendant further denied any representations had been made to the plaintiffs that he owned contiguous tracts, and averred they had been informed the lands in question "consisted of a large number of smaller tracts purchased by defendant of different parties," which were "almost but not entirely contiguous." He denied that the lands were broken up into separate tracts so relatively located that it would be impossible to conduct a timber operation upon them, and averred the tracts "were located so as to make it practicable to conduct a lumber operation thereon"; moreover, the defendant averred that the titles to the whole of the lands tendered were "good and marketable"; that the plaintiffs, "lumbermen of many years' experience," had examined the lands for themselves before contracting to purchase,

and they knew and understood at the time the estimate of Cobb "was a mere guess"; that, when the plaintiffs called upon the defendant to make the purchase, he expressly informed them "he would not guarantee any certain amount of timber thereon, and if they purchased said lands they would have to take them on their own judgment." The defendant denied that Gibson had "falsely and fraudulently, or otherwise, pointed out to the plaintiffs erroneous boundaries of defendant's lands, so as to pretendedly include the lands of other persons," averring that, on the contrary, he had indicated the true boundaries as nearly as possible, and that the plaintiffs were not deceived "by any acts or statements of the defendant or his agents in any way whatever as to the boundaries of said lands"; moreover, the defendant averred that the deed he proffered was for 29,644 acres, not 24,000 acres, "the same being the identical land and the whole thereof theretofore purchased by plaintiffs of defendant"; further, he denied that "there was a stipulation in said deed that for a failure of acreage or title the plaintiffs should only be entitled to deduct from the purchase-price $28.00 per acre," and averred "said deed was in proper form and in entire accord with the agreement of the parties"; finally, the defendant averred that the contract in question "was not verbal......, but in writing and signed by the said plaintiffs, fully identifying the parties, the price and the subject-matter," and that the plaintiffs' attempted rescission thereof was "entirely without any just, reasonable or legal cause or excuse"; wherefore, the defendant claimed to recover $400,000.00 damages as a set-off of the value of the lands he was prepared to convey.

When the case came to trial, the presiding judge ruled that a contract in writing sufficient to satisfy the requirements of the statute of frauds had not been shown, and this is complained of by the defendant in several assignments of error. All the other issues raised by the pleadings were sent to the jury on evidence which justi-

fied their submission; but the plaintiffs complain because the court below did not give binding instructions in their favor. We shall dispose of the two appeals together.

It is conceded by all parties that the West Virginia statute of frauds controls the present case; this requires that a contract for the purchase of real estate shall be evidenced by "some memorandum or note thereof...... in writing signed by the party to be charged thereby, or his agent." The defendant contends that a letter produced by him, signed by "C. B. Howard & Co.," dated January 18, 1906, and addressed to John A. Innes, together with other writings, and oral evidence, was sufficient to meet the requirements of the law. This letter reads as follows: "Referring to our conversation over the 'phone yesterday in regards to the 30,000 acres on the head waters of the Elk river in West Virginia which our Mr. Kaye purchased from you last Monday, we think it would be a good plan for our Mr. Kaye to go along with you to Elkins next week, as we are anxious to get all the maps and descriptions of the deeds and rights of way belonging to all your holdings in these lands as soon as possible, so we will have plenty of time to examine same before we sign the final detailed agreement which you are making."

After giving most thorough consideration to all the evidence offered upon the subject in hand, and reading the numerous authorities cited, we are not convinced the trial judge erred in his ruling that the proofs depended upon did not meet the requirements of the statute. The receipt given January 15, 1906, for the $10,000.00 paid on account, was signed by the defendant, not by the plaintiffs, hence, so far as the counterclaim is concerned, this writing, standing by itself, is not a memorandum "signed by the party to be charged." When we come to the letter of January 18, 1906, so largely depended upon by the defendant, while bearing the signature of "C. B. Howard & Co.," yet it, as well as the other writing just

referred to, indicates upon its face an incomplete agreement, not a final contract; more than this, when we consider the established facts at bar, it is plain that neither of these writings sufficiently identifies the lands in controversy. The property dealt with in the above writings consisted of a great number of separate tracts, some of which, at that time, the defendant owned outright, and upon others he merely held options; the acreage of a number of these tracts was uncertain, and the title to others was in dispute. It was not until January 23, 1906, that the defendant endeavored even to furnish a list of the properties which he proposed to convey, and it is admitted that at this time the deeds for several of these were not yet executed. Under these circumstances, it is apparent that the references to the lands in question contained in the above documents were wholly inadequate to identify the property intended to be conveyed, and an examination of the several other writings depended upon by the defendant, consisting of a check for the $10,000.00 hand-money, and some telegrams and letters, shows that these, taken either separately or together, did not fill the void in his case; for parol testimony was necessary not only to prove what was meant by "the 30,000 acres on the head waters of the Elk river in West Virginia which our Mr. Kaye purchased from you last Monday," but to locate and show how much of each of the several tracts comprehended therein was to be conveyed to the plaintiffs. Even if all the writings depended upon by the defendant had been signed by the plaintiffs or their agents, which they were not, in order to be admissible for the purpose offered, they would have to be either self-sustaining or connected with each other by internal references, whereas here they were so foreign to one another that parol testimony was absolutely essential to show any association between them. In other words, these writings were not self-sustaining; neither separately nor together did they describe the lands in controversy sufficiently to meet the requirements of the

statute, that is, they failed to show a completed contract for a defined subject-matter, signed by the party to be charged, or his agent.

Orally to identify the subject-matter of a contract, referred to in a written instrument by general description or through the medium of a recognized name, is essentially different from an attempt by parol evidence to determine and define the subject-matter itself; in one case the name or description is simply applied to the thing in view, while in the other the thing itself is established: see Title, Guaranty & Surety Co. v. Lippincott, 252 Pa. 112, and cases there referred to. Here, notwithstanding the offers to show that the lands in question were known as the "Innes tract" and could be so identified, when all the relevant established facts are considered, it is too plain for discussion that the defendant attempted the latter, or forbidden, not the former, or permitted course, and we are not convinced the court below erred in refusing to allow this to be done. Before leaving the branch of the case now under consideration, we take occasion to say there is no material difference between our law and that of West Virginia on the subject in hand. The defendant's assignments of error are all overruled.

On the other appeal, as already indicated, the plaintiffs contend for judgment in their favor notwithstanding the verdict. In disposing of this phase of the case, the court below states, inter alia: "The evidence is very conflicting as to the terms of the agreement. Plaintiffs' evidence tends to show that it was an absolute unlimited contract; on the other hand, the defendant's evidence is to the effect that it was a limited agreement, merely to sell and convey whatever interest the defendant had in the lands in question, expressly stipulating that the defendant would assume no responsibility as to titles, acreage or timber, and that the contract was for a reduced price because of such limited agreement. We instructed the jury that if they found for the plaintiffs on that question, then on account of certain defects

of title, shortages of amounts, etc., plaintiffs were
entitled to rescind the contract. Of course, the de-
fendant had a right to make such an agreement as
he contends was made, and, if so, his part of the agree-
ment would be performed by the tender of a deed suf-
ficient to convey whatever interest he had in the prem-
ises. The verdict of the jury indicates that they accepted
defendant's contention as to the terms of said agreement.
Plaintiffs also contended that such agreement, regard-
less of its terms, was void because of the alleged fraud
of plaintiffs' agent, one Captain W. H. Cobb, and, in
that connection, letters of Mr. Cobb to plaintiffs were
offered in evidence which plaintiffs urge contain false
and fraudulent statements with reference to the prop-
erty in question. There is nothing on the face of the let-
ters indicating fraud; if fraudulent it was because the
statements therein contained were at such variance with
the actual facts as to be false and fraudulent; but the
actual facts in the case had to be determined very largely
from the evidence of witnesses, so, while it might be the
duty of the court to construe the letters, it was certainly
the province of the jury to pass upon the facts. We are
not prepared to say that the undisputed evidence dis-
closes such a state of facts as to justify the court in de-
claring as a matter of law that Mr. Cobb was guilty of
fraud in the transactions. The letters seem to contain
some over-statements in regard to the gross amount of
timber on the lands, and also as to the percentage of
spruce and hemlock contained therein, but, so far as
we know, the timber is still standing on the premises, so
it has not yet been definitely determined as to the actual
amount and kinds thereof; it still remains, so far as
appears, a matter of estimate. Then, again, plaintiffs
before purchasing went upon the premises and made
some examination for themselves, and it is a question
of fact whether they relied upon the statements made to
them by Mr. Cobb, or upon their own personal inspec-
tion; in fact, the letters invite the plaintiffs to visit and

inspect the premises. We are of the opinion that, under all the facts, the question of fraud was for the jury. ......As to a part of said lands......perhaps ten to twelve per cent......, [McGraw & Strader tract], there was in the title a limitation of twenty years for the removal of the timber; and, at the conclusion of the trial, it was urged by the plaintiffs that they had no knowledge of such limitation, inasmuch as the deed to defendant [for this particular part of the property] was not recorded until the 24th day of May, 1906, being some 24 days after plaintiffs had refused to accept defendant's deed for the entire property, and that, by reason thereof, binding instructions should be given in favor of the plaintiffs. There are at least three reasons why we think such instructions could not be given. First, because, if defendant's version of the original contract be correct—and that was for the jury—he was only bound to convey to the plaintiffs such title as he had; hence, if he tendered the plaintiffs a deed in terms like his own for said Mc-Graw & Strader tract, it was a compliance with his version of the contract. Second, ......there was evidence to submit to the jury tending to show the plaintiffs had......knowledge of the existence of said limitation ......before the time of the attempted rescission of the contract; so [the existence of the limitation not having been made a ground for rescission] the question of waiver as to that was for the jury. Thirdly, we are not convinced that the court could declare as a matter of law the said twenty-year limitation was of such materiality as to justify the plaintiffs in rescinding their entire agreement. It is possible that in case of the sale of timber the purchaser would have only a reasonable time in which to remove it, in the absence of any limit being stated in the agreement of purchase, and no evidence was offered as to what would be a reasonable time for the removal of timber from this tract of land. Nothing was offered tending to show that a twenty-year limitation would materially depreciate the value of such purchase

of timber, and we are not clear that there is any rule of law that would enable the court to so declare......We believe......that whether a contract for the sale of land will be regarded as rescinded for partial failure of title alone depends upon the circumstances, ......and, if so, we cannot see, as matter of law, that [under the circumstances here present] the said twenty-year limitation was of such materiality as to justify plaintiffs in rescinding the entire contract."

The above quoted excerpts from the opinion of the court below amply dispose of the plaintiffs' appeal, but it may be noted that the matter of this twenty-year limitation is nowhere depended upon or referred to in the plaintiffs' statement of claim; it appears to have been brought forward at trial after the deed showing the limitation had been allowed in evidence for an entirely different purpose, and even then the plaintiffs did not ask to amend their declaration, in order to add this restriction as an additional justification for the rescission of their contract. While it is true that Mr. Cobb's original letter to the plaintiffs stated "There is no time limit for the removal of the timber," with some general exceptions, yet it was not made clear that the plaintiffs in any sense depended upon that statement, or that, in point of fact, the defendant really had any greater knowledge upon the subject than the plaintiffs; furthermore, all the indications were that the limitation was not considered of material importance by any of the parties until its significance was urged at the end of the trial in the court below. After reading the voluminous testimony in the case, we find no justification for the assertion that Mr. Innes deliberately misled the plaintiffs as to the existence of the limitation, and, since there was a decided conflict in the evidence as to whether or not they were deceived in any other respect concerning the lands which they sought to purchase, all of the issues in that regard were properly submitted to the jury.

The crucial points in the case involved the character

of the contract and the grounds of its rescission, and as to these matters the testimony of the defendant and his witnesses is clear and unequivocal; it appears therefrom that, while Mr. Cobb called the lands to the attention of the plaintiffs, yet, after making an inspection on his invitation, they, instead of negotiating with him for the purchase thereof, went directly to Mr. Innes, the owner. When Mr. Kaye, of the plaintiffs, called on Mr. Innes, the latter immediately informed him, "I wanted to get into communication with Mr. Cobb so there wouldn't be any complication." Mr. Innes testified that Mr. Kaye insisted on buying the property forthwith, without giving him an opportunity to confer with Mr. Cobb. Mr. Innes further said he told Mr. Kaye, "I have never been on the property and do not know whether there is a tree on it, and I wouldn't guarantee whether there was a tree on it; ......if you take this property to-day, you take it on your own knowledge as to titles, acreage, right of way, or anything connected with this property—I am not familiar with the property myself"; to which Mr. Kaye replied that he had been upon the property and talked with Mr. Cobb, who had explained to him "regarding the titles and rights of way," but he did not tell Mr. Innes what Mr. Cobb had said or that he was relying upon his statements. In conclusion, Mr. Innes stated that, when the plaintiffs finally declined to accept a deed for the property, they did not say Mr. Cobb had misled them in any particular, but placed their refusal solely upon the ground that "James Gibson had shown them timber that wasn't in the boundary, or on the lands that I (Innes) owned—they had been shown the wrong timber." A witness for the defendant, who was present at the time of the purchase, fully corroborated his testimony, stating that Mr. Innes told Mr. Kaye he would accept his offer at $28.00 per acre, which was $2.00 less than the asking price, "but that if he sold them that morning to him he must take those lands just as he (Innes) had them as regards the timber and the titles and the acre-

age"; that "Mr. Kaye said Mr. Cobb had given him an estimate of the timber......and wanted to know of Mr. Innes what his estimate was," and in reply Mr. Innes said "he had no estimate whatever......, that if he (Kaye) took the lands, he would take them on his own inspection, that he (Innes) wouldn't guarantee there was a tree on any portion of them"; that "the result of the conversation was Mr. Kaye said he would take the lands for C. B. Howard & Co. at $28.00 per acre, and drew a check for $10,000.00 as down payment, and gave it to Mr. Innes, and Mr. Hammond drew a receipt for this $10,000.00 which Mr. Innes signed and delivered either to Mr. Kaye or Mr. Hammond." If the jurors believed this testimony, and their verdict shows they did, it was amply sufficient to justify a finding that the plaintiffs knowingly purchased the lands in controversy just as they stood and as defendant held them, which finding would be enough to sustain the verdict rendered. The law upon this subject has recently been reviewed in Little v. Thropp, 245 Pa. 539; also see Lazarus v. Lehigh & Wilkes-Barre Coal Co., 246 Pa. 178. The plaintiffs' assignments are likewise overruled.

The jury found for the defendant in the sum of $3,-547.20; whereupon the court requested them to retire and ascertain the amount which the plaintiffs would be entitled to recover should it thereafter be determined, as a matter of law, that on the entire evidence the plaintiffs, and not defendant, were entitled to the verdict. The jury fixed this amount at $18,267.08, and the plaintiffs subsequently moved for judgment n. o. v., accompanying their motion with a suggestion that should it be refused "then the plaintiffs hereby specifically object to the entry of judgment in favor of the defendant upon the verdict of the jury for any greater amount than the costs incurred in this case, for the reason that the amount of damages proved by the defendant......and awarded to him by the verdict......, to wit, $3,547.20, is less than the hand-money paid by the plaintiffs........which

amounted to $10,000.00 and is still retained by the defendant." The plaintiffs' motion for judgment in their favor was overruled, but their objection to the monetary award made by the jury was sustained, and the verdict was amended "so as to be simply a verdict for the defendant"; subsequently, on motion of the latter's counsel, a general judgment was entered "in favor of the defendant and against the plaintiffs......, for costs in the above case." While both plaintiffs and defendant have appealed from this judgment, yet the practice pursued in reaching it is not criticised by either side, hence it calls for no discussion on our part; we have noted it merely by way of explanation of the record. Finally, we find no complaint from the defendant because the damages awarded him were struck from the verdict in his favor; as to this, however, the court below very properly states: "The defendant has already received from the plaintiffs more than three times the amount of his expenditures, and it would be inequitable to allow him to recover again what, in fact, he has already been more than paid. The very object of the $10,000.00 earnest money, cash payment, was the protection of the defendant, and, as we held at the trial that the parol contract was invalid under the statute of frauds, we see no basis on which the balance found for the defendant can be sustained...... In principle, this branch of the case is ruled by Roach v. Irvin, 245 Pa. 162."

The judgment is affirmed.